**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 52A02–0601–JV–24.**

Court of Appeals of Indiana.

June 26, 2006.

Susan K. Carpenter, Public Defender of Indiana, Amy E. Karozos, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

J.B. challenges the trial court's order committing him to the Department of Correction ("DOC") following a probation violation. We affirm.

### Issues

J.B. raises two issues for our review, which we reorder as:

I. whether the trial court erred by considering information contained in a predispositional report when ordering J.B.'s commitment to the DOC; and

II. whether the trial court abused its discretion by committing J.B. to the DOC.

### Facts

The facts most favorable to the trial court's order indicate that now fifteen-year-old J.B. has a history of juvenile delinquency that began when he was eleven years old and a history of substance abuse that began when he was seven years old. In 2002 J.B. was placed on informal probation for committing acts that would have constituted conversion if committed by an adult. In 2003 he was again placed on informal probation for possessing marijuana. In 2004 J.B. admitted to committing acts that would have constituted burglary if committed by an adult. As a result of that admission, J.B. was placed on supervised probation, to serve five weekends in the Robert J. Kinsey Youth Center, and to pay restitution. On March 4, 2005, the State alleged that J.B. had tested positive for marijuana in violation of the terms of his probation. J.B. admitted the allegation and was ordered to continue serving supervised probation, to perform fifty hours of community service, and to serve fifteen days in the Robert J. Kinsey Youth Center.

On May 23, 2005, the Howard County probation department filed a petition to modify the terms of J.B.'s probation alleging that he had committed what would have constituted Class D felony theft if he were an adult. J.B. admitted the allegation on July 11, 2005 at a hearing in Howard County. The Howard County trial court, sua sponte, transferred the disposition of what appears to be the petition to modify probation to Miami County. On December 14, 2005, the Miami County trial court ordered J.B. to be committed to the DOC.

At the December 14, 2005 dispositional hearing in Miami County, J.B. submitted for the trial court's consideration a predispositional report that was prepared by Howard County probation officer Kim Gerber. At the same dispositional hearing, and over J.B.'s objection, the State submitted an additional, updated predispositional report written by Miami County probation officer Mandy Miller. Miller's report recommended that J.B. be committed to the DOC and did not mention alternative placements. Both Gerber and Miller testified regarding their opinions of where J.B. should be committed. The trial court then ordered J.B.'s commitment to the DOC. J.B. appeals.

## Analysis

### I. Miami County Predispositional Report

■ J.B. contends that his disposition should be vacated because the predispositional report submitted by the Miami County probation department did not include a description of all dispositional options the probation officer considered in preparing her report. This appears to be an issue of first impression. Indiana Code Section 31–37–17–6.1, which governs the content of predispositional reports, provides in part:

(a) The predispositional report prepared by a probation officer or caseworker shall include the following information:

(1) A description of all dispositional options considered in preparing the report.

(2) An evaluation of each of the options considered in relation to the plan of care, treatment, rehabilitation, or placement recommended under the guidelines described in section 4 of this chapter.

Miller prepared the report in this case on behalf of the Miami County probation department, and, in the "Recommendations" section of her report wrote:

Based on the juvenile's extensive history with the juvenile justice system, continued use [of] marijuana, and increasingly serious offense pattern, this officer recommends the juvenile be placed at the Indiana Department of Corrections, Juvenile Division on Wednesday, November 2, 2005 at 9:00 a.m. It is additionally recommended, pending placement in said facility, the juvenile be placed in secure detention.

App. p. 96. We conclude that Miller's predispositional report complies with the requirements set forth in Indiana Code Section 31–37–17–6.1.

At his disposition hearing, J.B. objected to Miller's report and questioned Miller regarding her decision to discuss only the DOC in that report. Miller stated, "As far as options considered I did not include Fairbanks."[1] Tr. p. 29. When questioned about the statutory requirements for her report, Miller continued, "You're required to list things that you considered, yes. And what I consider based on his history is listed." *Id.* at 30. The trial court then asked Miller, "Did you consider any other options?" *Id.* at 31. Miller responded, "I can say that I did not consider Fairbanks until his parents, I mean until today, until that was brought up. His parents brought it to Court and that's when Fairbanks was considered. I did not consider that facility. If that's the question." *Id.* The Court then stated, "It seems to me that she's included what she has thought about." *Id.*

1. Fairbanks is a non-profit drug and alcohol abuse treatment organization located in Marion County. *See* http://www.fairbankscd.org (last visited June 5, 2006). J.B. argues that, given his need for substance abuse treatment, Fairbanks is the least-restrictive and most appropriate placement for him.

During this exchange with Miller, the trial court stated, "Are we talking about every single option available in the State of Indiana?" *Id.* at 32. Along a similar vein, the State's appellate brief argues, "the mere existence of such alternatives and their presentation to the trial court does not dictate that the probation officer's report is deficient in its failure to include or evaluate those options." Appellee's Br. p. 8.

We agree with this common-sense approach—the statute does not require that a predispositional report provide information about every single placement option that is conceivably available to a juvenile. The statute mandates that a predispositional report provide, "A description of all dispositional options considered in preparing the report." I.C. 31–37–17–6.1. Miller unequivocally testified that she considered only the DOC as a placement option for J.B., and that is the option she discussed in her report. In so doing, she complied with the statute.

## II.  Placement in the DOC

■ J.B. further argues that the trial court abused its discretion by ordering his commitment to the DOC. The disposition of a child adjudicated to be delinquent is generally left to the discretion of the trial court. *R.S. v. State,* 796 N.E.2d 360, 364 (Ind.Ct.App.2003), *trans. denied.* That discretion, however, is subject to the statutory considerations of the child's welfare, the community's safety, and the policy of favoring the least-harsh disposition. *Id.; see also* Ind.Code § 31–37–18–6. We will reverse a juvenile disposition only for an abuse of discretion, which occurs only if the trial court's action is "clearly erroneous and against the logic and effect of the facts and circumstances before the court, or against the reasonable, probable, and actual deductions to be drawn therefrom." *Id.*

J.B. contends that the trial court's decision to incarcerate him contravenes Indiana Code Section 31–37–18–6. That statute provides:

*If consistent with the safety of the community and the best interests of the child,* the juvenile court shall enter a dispositional decree that:

  (1) is

    (A) in the least restrictive (most family like) and most appropriate setting available; and

    (B) close to the parents' home, consistent with the best interest and special needs of the child;

  (2) least interferes with family autonomy;

  (3) is least disruptive of family life;

  (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

  (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

I.C. § 31–37–18–6 (emphasis added).

In particular, J.B. asserts: "The record does not support a finding that the Department of Correction was the least-restrictive and most appropriate placement for [J.B.]." Appellant's Br. p. 10. In support of his argument, J.B. points us to a portion of Gerber's testimony in which she indicated that Fairbanks was a less-restrictive placement option that would provide better treatment for J.B. than the DOC. *See* Tr. p. 17. This argument, however, fails to consider the portion of the statute we have emphasized above—that the trial court is only required to consider the least restrictive placement *if* that placement comports with the safety needs of the community and the child's best interests. I.C. § 31–37–18–6. We conclude that the trial court did not abuse its discretion by committing J.B. to the DOC because the less-restric-

tive placement suggested by J.B. would have fallen short of meeting the community's safety needs. We further conclude that placement in the DOC is in J.B.'s best interests.

Miller's pre-dispositional report provides a good snapshot of J.B.'s involvement with the juvenile justice system:

Although [J.B.] is only fourteen years old, he is currently on Probation for the third time. His current probation supervision is a result of his commission of a Class C Felony Burglary. He has spent 48 days in Secure Detention during this current Probation supervision, 15 of which were due to a positive marijuana urine screen. 20 days were due to his commission of the current Theft charge.

The juvenile has an extensive history of substance abuse dating back to age nine. This office offered the juvenile substance abuse treatment but instead the juvenile decided to attend NA meetings with a friend. The juvenile has continued to smoke marijuana as evidenced by his testing positive on two urine drug screens. The juvenile is currently expelled from school due to being in possession of marijuana while on school property. This occurred while pending disposition in this matter.

Despite being placed on an inpatient unit due to an alleged suicide attempt, the juvenile's parents discharged him against medical advice and have not sought any additional therapy or medication management. The juvenile has been prescribed prescription medication for Depression on three occasions but within two months of taking each medicine, he has chose [sic] to stop taking the medication.

The Howard County Probation Department recommended the juvenile serve an additional sixty days and Pro-

bation terminate as a result of this pending case. The juvenile has spent 48 days in detention throughout the past year and has continued to use drugs and commit new offenses while being supervised on probation. It is this officer's opinion the juvenile needs intensive substance treatment and cognitive behavioral health therapy. His behavior and choices have proven, without it, he will continue to be arrested.

App. p. 95.

As a fifteen-year old, J.B. has had more than his share of experiences with the juvenile court system. He has had many chances to modify his behavior but has consistently rejected those opportunities by violating his probation, committing new offenses, and continuing to abuse drugs. Although we are sympathetic with those struggling to overcome drug addictions and in no way wish to diminish their plight, we are mindful of the impact their actions might have on community safety.

Miller's predispositional report indicates that she believes J.B. is likely to continue to commit offenses and recommends that he be placed in the DOC. Similarly, Gerber testified that, "[J.B.] at this point in time is a danger to the community, is a danger to others until he gets his substance abuse under control." Tr. p. 16. Gerber further characterized the DOC as "a secure environment" in which he would be able to receive the treatment he needs. *Id.* at 17. By contrast, Fairbanks is not a secure facility. Gerber answered, "Absolutely," when asked whether J.B. "[c]ould leave [Fairbanks] one day and just not return." *Id.* at 18.

Clearly, J.B.'s actions both pose a threat to the safety of the community and are self-destructive. J.B. needs to be in a structured, secure environment in which he does not pose a threat to the community, can learn to modify his criminal behav-

ior, and can receive the substance abuse treatment he needs. The least restrictive placement for which J.B. argues is not a secure facility and cannot provide these things. That placement, therefore, is not consistent with the safety needs of the community or in J.B.'s best interests.

### Conclusion

Miller's predispositional report complied with statutory requirements, and the trial court did not err by admitting it. The trial court did not abuse its discretion by committing J.B. to the DOC. We affirm.

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.