**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KATHRYN C. BYROM**
Kendallville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| T.A.B., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No.  57A03-1204-JV-154 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE NOBLE SUPERIOR COURT
The Honorable Robert E. Kirsch, Judge
Cause Nos.  57D01-1111-JD-64 and 57D01-1110-JD-72

**September 7, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

STATEMENT OF THE CASE

T.A.B., following his admission, under two separate cause numbers, to allegations that he committed acts that would constitute class A misdemeanor battery and class B misdemeanor battery if committed by an adult, appeals the juvenile court's order placing him at Indiana Boys School.

We affirm.

ISSUE

Whether the juvenile court abused its discretion by awarding wardship of T.A.B. to the Department of Correction with placement at Indiana Boys School.

FACTS[1]

Sixteen-year-old T.A.B. lived in Ligonier with his grandmother, P.B. ("Grandmother"), who was also his legal guardian. On August 16, 2011, the State filed a petition, under cause number 57D01-1108-JS-007 ("JS-7"), alleging that T.A.B. was a delinquent child for committing illegal consumption.[2] On September 27, 2011, the juvenile court adjudicated T.A.B. to be a delinquent for having committed illegal consumption, placed him on probation for six months, and ordered him to attend counseling.

---

[1] The record before us does not include a transcript from the initial hearings in the two causes in which T.A.B. entered his admissions that he had committed the two acts of battery. Therefore, the facts surrounding these acts will be taken from the police reports attached to the affidavits for probable cause in each cause.

[2] While T.A.B. is not appealing the juvenile court's order relating to JS-7, some procedural facts regarding this cause will be discussed as they relate to the other causes on appeal.

2

On September 20, 2011, T.A.B. shoved Grandmother to the ground during an argument, causing her to injure her tailbone and lower back area. Grandmother called the police. Once the officers arrived at the house, T.A.B. "kept yelling and screaming" and "using abusive language" toward Grandmother. (App. 13). Thereafter, the State filed a petition, under cause number 57D01-1110-JD-064 ("JD-64"), alleging that T.A.B. was a delinquent child for committing battery as a class A misdemeanor if committed by an adult. At the initial hearing held on November 2, 2011, T.A.B. entered an admission to the battery allegation.

Less than two weeks later, on November 15, 2011, T.A.B. shoved Grandmother, broke a desk fan, punched holes in the walls, and threatened to kill Grandmother and his "bedridden" grandfather. (App. 44). Grandmother again called the police. On November 23, 2011, the State filed a petition, under cause number 57D01-1111-JD-072 ("JD-72"), alleging that T.A.B. was a delinquent child for committing battery and criminal mischief, both as a class B misdemeanors. At the January 17, 2012 initial hearing, T.A.B. entered an admission to the battery allegation, and the State dismissed the criminal mischief allegation.

On March 7, 2012, the juvenile court held a hearing for a disposition on causes JD-64 and JD-72 and for a probation violation in cause JS-7. During this hearing, T.A.B. admitted that he had failed to comply with the juvenile court's instruction, made to him during his January 17, 2012 initial hearing, that he attend school, and he acknowledged that he had not gone to school since that hearing. T.A.B.'s counsel argued that T.A.B.'s "bad environment" was partially to blame for his situation, noting that his battery

3

offenses had occurred in the home and that T.A.B. ended up in court because Grandmother called the police. (Tr. 14). T.A.B.'s counsel requested that the juvenile court place T.A.B. in a residential facility that was "something short of DOC[.]" (Tr. 14).

The probation officer recommended that the juvenile court terminate T.A.B.'s probation as unsatisfactory and place him at Indiana Boys School. The probation officer—pointing to the facts that T.A.B. had been engaging in violence in the home, had not attended school since December 21, 2011, and had not fully complied with scheduled counseling sessions—recommended the juvenile court place T.A.B. with the Department of Correction because "substantial steps need[ed] to be taken to help T.A.B. regain control over his life." (Tr. 8).

The prosecutor agreed with the probation officer's recommendation to award wardship of T.A.B. to the Department of Correction with placement in Indiana Boys School. The prosecutor argued that this placement was "appropriate considering [T.A.B.'s] conduct, specifically going against what the Court ha[d] ordered in the past as well as his entire body of work on probation of not completing the treatments required[.]" (Tr. 10).

During the hearing, the juvenile court specifically asked the probation officer to discuss options other than Indiana Boys School. Thereafter, the probation officer compared placement at Indiana Boys School to other residential placement options that would be appropriate given T.A.B.'s history and cases. The probation officer testified that both placement options were designed to address a juvenile's needs, including psychological services and what is required to function properly in a home and school

4

environment, but stated that the Department of Correction placement programs "work effectively faster." (Tr. 23).

The juvenile court terminated T.A.B.'s probation and awarded wardship of T.A.B. to the Department of Correction with placement at Indiana Boys School. T.A.B. now appeals the juvenile court's dispositional orders in both cause JD-64 and cause JD-72.[3]

DECISION

T.A.B. contends that the juvenile court abused its discretion by placing him in the Department of Correction, arguing that it was not the least restrictive setting.

The choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). A juvenile disposition will not be reversed absent a showing of an abuse of discretion. *Id.* An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual inferences that can be drawn therefrom. *Id.* Thus, the juvenile court is accorded wide latitude and great flexibility in its dealings with juveniles. *Id.*

T.A.B. contends that the juvenile court's decision to place him at the Department of Correction was in contravention of Indiana Code § 31-37-18-6, which provides:

---

[3] Upon a motion by T.A.B., this court ordered that the appeal from these two causes be consolidated.

If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:

(1) is:

    (A) in the least restrictive (most family like) and most appropriate setting available; and

    (B) close to the parents' home, consistent with the best interest and special needs of the child;

(2) least interferes with family autonomy;

(3) is least disruptive of family life;

(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Specifically, T.A.B. contends that the juvenile court's dispositional order was erroneous because the juvenile court did not consider any factors contained in Indiana Code § 31-37-18-6, such as the least restrictive setting.

We have previously explained that, under this statute, the juvenile court "is only required to consider the least restrictive placement *if* that placement comports with the safety needs of the community and the child's best interests." *J.B. v. State*, 849 N.E.2d 714, 717 (Ind. Ct. App. 2006) (citing I.C. § 31-37-18-6). "Thus, the statute recognizes that in certain situations the best interest of the child is better served by a more restrictive placement." *K.A. v. State*, 775 N.E.2d 382, 387 (Ind. Ct. App. 2002), *trans. denied*.

Here, this is not a case where T.A.B. committed his first offense and was directly placed in the Department of Correction. Indeed, the record before us reveals that T.A.B. has a history of contact with the juvenile court system. The record also reveals that

6

sixteen-year-old T.A.B. has used alcohol and marijuana and that he was placed on probation for illegal consumption. T.A.B. committed three juvenile offenses within a three-month period, and the record shows that the two battery adjudications that are the subject of this appeal were T.A.B.'s fourth and fifth referral to the juvenile court system. Furthermore, T.A.B. committed one of the battery offenses while he was awaiting disposition on his adjudication for illegal consumption and committed the other battery offense while he was on probation for illegal consumption. Through his placement on probation, T.A.B. was given a chance to reform his behavior but failed to do so. T.A.B. committed both battery offenses against his grandmother and, during one of these instances, he punched holes in the wall and threatened to kill his grandmother and grandfather. Additionally, the record indicates that T.A.B. failed to comply with the juvenile court's specific instruction to attend school and was not in full compliance with the juvenile court's order to attend counseling. T.A.B.'s behavior toward his grandmother and his defiance of the juvenile court's orders show a lack of respect for authority.

Although residential placement may have been an alternative placement option, the juvenile court was not required to choose that as a placement option for T.A.B. "'In some instances, confinement may be one of the most effective rehabilitative techniques available' when a juvenile is exposed to the type of placement [he] would encounter were [he] to continue with [his] poor behavior." *K.A.*, 775 N.E.2d at 387 (quoting *Madaras v. State*, 425 N.E.2d 670, 672 (Ind. Ct. App. 1981)). Given the facts and circumstances of this case, we cannot say that the juvenile court abused its discretion by committing

7

sixteen-year-old T.A.B. to the Department of Correction with placement at Indiana Boys School. *See, e.g.*, *M.R. v. State*, 605 N.E.2d 204, 208 (Ind. Ct. App. 1992) (explaining that "[t]here are times in juvenile proceedings when the best interest of the juvenile and society require commitment to the Boys School"); *Matter of Ort*, 407 N.E.2d 1162, 1164–65 (Ind. Ct. App. 1980) (affirming the juvenile court's placement of juvenile at Indiana Boys School, despite fact that less severe disposition was available, where juvenile appeared regularly before the trial court, and it was in juvenile's best interest to learn that his choices had consequences).

Affirmed.

FRIEDLANDER, J., and BROWN, J., concur.