## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 13 2017, 9:36 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Houdek
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| X.T.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | January 13, 2017<br><br>Court of Appeals Case No.<br>49A05-1605-JV-1126<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Scott Stowers, Magistrate<br><br>Trial Court Cause No.<br>49D09-1503-JD-409 |

**Baker, Judge.**

[1] X.T. appeals the juvenile court's finding that he violated a condition of probation, arguing that there is insufficient evidence supporting the finding. He also argues that the juvenile court erred by ordering him to be removed from his home and placed in a secure residential facility following the probation violation. Finding sufficient evidence and no error, we affirm.

## Facts

[2] On April 19, 2015, X.T. admitted to committing an act that would have been class A misdemeanor trespass had it been committed by an adult. The juvenile court placed him on probation. One of his conditions of probation was that X.T. must "not possess or be around or in the presence of anyone possessing any gun, rifle, or shotgun[.]" Appellant's App. Vol. II p. 88.

[3] While on probation, X.T. tested positive for drug screens on July 16, August 20, and September 10, 2015. As a result, on October 28, 2015, the juvenile court ordered X.T. to be placed on electronic monitoring until he was able to provide two clean drug screens. X.T. failed to comply with electronic monitoring by leaving his residence on October 27, October 29, October 31, and November 5, 2015. X.T. again failed to comply with probation when he was suspended from school on February 12 and February 16-19, 2016; when he tested positive for drugs on February 5, 9, and 11, 2016; and when he allegedly committed a new offense of criminal mischief. At one point when he was detained in March 2016, X.T. was elevated to Level 1 at the Juvenile Detention Center after it received two reports of X.T. being aggressive and threatening his peers.

[4] On March 18, 2016, X.T. was released from electronic monitoring. Four days later, on March 22, 2016, the State filed a petition to modify X.T.'s probation based on an allegation that he had been in the presence of a firearm within hours of his release from electronic monitoring on March 18. Probation Officer Cory Brattain had viewed a Facebook Live video that showed X.T. in a garage with several of his peers. X.T. appears in the garage at 41 seconds into the video and again at 2:08-2:15. At the 3:11 mark, another individual brandished a handgun on camera; the person filming the video can be heard saying, "watch out bitch, you'll go to jail." State's Ex. 2. X.T. was standing to the right of the camera when the handgun was shown and can be seen just outside the garage at 3:29, 3:43, 4:12, and 6:03. At another point during the video, comments are made indicating that one or more members of the group were smoking marijuana. On April 8, 2016, a contested hearing was held regarding the allegation that X.T. had violated probation by being in the presence of a gun. The juvenile court found that X.T. had, in fact, violated probation.

[5] A dispositional hearing was held on April 29, 2016. The predispositional report recommended that X.T. be placed in a secure residential facility based on his many probation violations, high risk to reoffend, and association with peers in high risk situations involving guns and drugs. Eleven different facilities rejected X.T. because of aggressiveness, high risk, and the scope of treatment they were able to offer. One facility—Transitions Academy—accepted X.T. and had an immediate opening. At the conclusion of the hearing, the juvenile court found that remaining in the home would be contrary to X.T.'s welfare. The reasons

underlying this finding are as follows: the nature of the most recent violation; the nature of the probable cause affidavit; X.T.'s lengthy juvenile history including prior true findings for burglary, escape, and criminal mischief; and the fact that, within hours of being released from electronic monitoring, X.T. appeared in a video with peers who were smoking marijuana, brandishing a gun, and making threats on social media. Therefore, the juvenile court placed X.T. on a suspended commitment to the Department of Correction and ordered that he be placed in Transitions Academy. X.T. now appeals.

# Discussion and Decision

## I. Sufficiency

[6] First, X.T. argues that there is insufficient evidence supporting the juvenile court's finding that he had violated the condition of his probation requiring him to refrain from being in the presence of firearms. A probation hearing is civil in nature. *Smith v. State*, 963 N.E.2d 1110, 1112 (Ind. 2012). To support an allegation of a probation violation, the State is required to prove that the violation occurred by a preponderance of the evidence. *C.S. v. State*, 817 N.E.2d 1279, 1281 (Ind. Ct. App. 2004). In considering the sufficiency of the evidence, we will neither reweigh the evidence nor assess witness credibility, and will affirm if there is substantial evidence of probative value supporting the juvenile court's decision. *Id.*

[7] As part of his probation, X.T. was explicitly told that "you shall not possess or be around or in the presence of anyone possessing any gun, rifle, or shotgun[.]"

Appellant's App. Vol. II p. 88. The State offered evidence that, in March 2016, X.T. was in a garage with several of his peers during the filming of a Facebook Live video. X.T. is seen many times during the video both in and immediately outside of the garage. When the handgun was brandished, X.T. was to the right of the person filming the video such that X.T. would have been able to see the firearm. The probation officer testified that based on his experience and the comments of the individuals present, he believed the handgun to be real. We find that the juvenile court reasonably inferred from this evidence that X.T. was aware of the firearm. It was discussed in his presence and, based on his various locations in the video, he was able to see the firearm and hear it being referred to by the other people present. Therefore, we find the evidence sufficient to support the juvenile court's finding that X.T. violated his probation.[1]

## II. Disposition

X.T. also argues that the juvenile court erred by ordering him placed in a residential facility. The disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). The juvenile court's discretion is subject to the statutory considerations of "the child's welfare, the community's safety, and the policy of favoring the least-harsh disposition." *J.B. v. State*, 849 N.E.2d 714,

---

[1] X.T. argues that the probation condition was impermissibly vague because it could arguably encompass an individual who was unknowingly in the presence of a firearm. We need not address this argument, however, as we find the evidence sufficient to establish that X.T. was knowingly in the presence of the handgun.

717 (Ind. Ct. App. 2006); *see also* Ind. Code § 31-37-18-6. We will reverse only if the juvenile court's decision is clearly erroneous and against the logic and effect of the facts and circumstances before it or the reasonable, probable, and actual inferences that can be drawn therefrom. *J.S.*, 881 N.E.2d at 28.

[9]  In this case, X.T.'s lengthy history includes the following incidents:

- Prior true findings for burglary, escape, and criminal mischief.
- Formal probation following the burglary and escape true findings.
- While on probation for the instant adjudication, true findings that X.T. had tested positive for drug screens on three occasions and failed to comply with electronic monitoring by leaving his residence on four occasions.
- While on probation for the instant adjudication, allegations that X.T. had violated probation in other ways by being suspended from school for five days, testing positive for drugs on three occasions, and committing a new offense of criminal mischief.

At various points during X.T.'s juvenile history, he has received the following services: supervised release, electronic monitoring (three times), drug testing, substance abuse treatment, cross systems of care coordination services, mentoring, case management, therapy/behavioral services, formal probation, psychological evaluation, parent-monitored curfew, evening reporting center at a boys and girls club, and functional family therapy. The first action X.T. took after being removed from electronic monitoring was to hang out with his peers, who were smoking marijuana, brandishing a handgun, and making threats on live social media.

It is evident that despite the many services and second, third, and fourth chances offered to X.T., he has been unable or unwilling to modify his behavior. The juvenile court drew a reasonable conclusion that to rehabilitate X.T., as well as keep X.T. and the community safe, the best and least restrictive option was to place him in a secure residential treatment facility. We find no error in the juvenile court's dispositional order.

The order of the juvenile court is affirmed.

Mathias, J., and Pyle, J., concur.