# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 01 2018, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David L. Joley
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

S.C.,

*Appellant-Respondent,*

*v.*

State of Indiana,

*Appellee-Petitioner.*

February 1, 2018

Court of Appeals Case No.
02A03-1708-JV-1971

Appeal from the Allen Superior Court

The Hon. Michael Douglass, Judge
*Pro Tempore*

Trial Court Cause No.
02D07-1610-JD-1224

**Bradford, Judge.**

# Case Summary

In November of 2016, the State filed a delinquency petition alleging that Appellant-Respondent S.C. committed what would be Level 6 felony escape if committed by an adult. The petition alleged that S.C. had absconded from electronic monitoring and was the eighth delinquency petition filed against S.C. in approximately two years. In the few months following release from a sixty-five-day commitment to the Allen County Juvenile Center ("ACJC"), S.C. tested positive for marijuana several times, was suspended from school for fighting, and absconded from electronic monitoring again. The State petitioned for modification of the disposition in this case, and, after a hearing, the juvenile court ordered S.C. committed to the Department of Correction ("DOC"). S.C. argues that the juvenile court abused its discretion in ordering a DOC commitment when less restrictive options were available. Because we disagree, we affirm.

# Facts and Procedural History

S.C. was born in August of 2002, and his involvement with the juvenile justice system began in 2015, with two adjudications for leaving home. Prior to this case, S.C. had accumulated seven juvenile cases involving probation, including adjudications for escape and intimidation. In September of 2016, S.C. was expelled from middle school for fighting; at the time, he was on probation and subject to electronic monitoring following his intimidation adjudication. On October 21, 2016, S.C., absconded from the electronic monitoring program,

and an arrest warrant was issued. S.C.'s actions upon being apprehended by the authorities led to another delinquency petition being filed, based on an allegation of resisting law enforcement.

[3] On November 1, 2016, the State petitioned to have S.C. found a juvenile delinquent for committing what would be Level 6 felony escape if committed by an adult. On December 5, 2016, S.C. admitted to the escape charge and was adjudicated delinquent. On January 12, 2017, the juvenile court held a dispositional hearing, after which it placed S.C. in the ACJC for sixty-five days, under the supervision of the Allen County Juvenile Probation Department, to be followed by probation. The juvenile court also ordered S.C. to participate in electronic monitoring, complete substance-abuse counseling, and submit to random drug testing.

[4] On March 17, 2017, S.C. was released from the ACJC to electronic monitoring. S.C. was awarded free time from electronic monitoring on April 10, 2017, and smoked marijuana as soon as he left home. On April 17, 2017, S.C. tested positive for marijuana. On May 4, 2017, S.C. was suspended from school for the remainder of the school year after fighting with his sister. On May 20 and June 7, 2017, S.C. twice again tested positive for marijuana.

[5] Also on June 7, S.C.'s mother contacted the authorities and advised them that S.C. had been sneaking unauthorized young persons into her home. When officers conducted a visit at the residence, S.C. had already left, thereby absconding from the electronic monitoring program. On June 8, 2017, a

warrant was issued for S.C.'s arrest on allegations that he had violated his dispositional order by testing positive for marijuana and by failing to follow the rules and regulations of electronic monitoring.

[6] On June 22, 2017, S.C. was located when police responded to a report of a burglary in progress. S.C. was arrested, was detained at the ACJC pending disposition, and again tested positive for marijuana. At a review hearing held the next day, probable cause was found for filing delinquency petitions against S.C. for the two new offenses of leaving home and false informing and probable cause was also found for the violations of the dispositional order in this case. On June 26, 2017, a petition for modification of the dispositional order in this case was filed and approved by the juvenile court. An initial/modification hearing was held on June 27, 2017, and S.C. admitted to the dispositional violations in this case. As a result, the petition for modification was granted, and S.C. remained in secure detention pending disposition. An ACJC report dated July 19, 2017, noted that, since beginning confinement on June 24, 2017, "[S.C.] has received no incident reports while in detention, Staff state he seldom has behavior issues and most times he can be easily redirected. His interactions with peers and staff are positive and he is always willing to extra work on and off the unit." Appellant's App. Vol. II p. 30.

[7] S.C.'s dispositional hearing was held on July 24, 2017. The probation department recommended a DOC commitment because S.C. had repeatedly tested positive for marijuana and committed the new offense of escape when he absconded from electronic monitoring. The probation department introduced

evidence that S.C. continued to engage in aggressive and/or violent behavior, continued to disregard reasonable rules of his home, was uncooperative with probation services, had committed new delinquent acts, continued to abuse illegal substances, placed his physical and mental health at risk, and acted in such a way as to pose a danger to himself and others. A report, apparently prepared by the ACJC placement board, unanimously recommended confinement in DOC.

[8] After receiving evidence, the juvenile court noted that S.C.'s overall risk assessment score put him in the high risk to reoffend category, electronic monitoring had been tried and failed, drug classes were not helping because of his continued drug use, house arrest had not worked in the past, and he had repeatedly violated the terms of probation. The juvenile court issued special findings as follows: S.C. (1) has an extensive history of incorrigible behavior, (2) was on probation when he committed a new offense, (3) must learn logical and natural consequences of delinquent behavior, and (4) is in need of rehabilitation and will benefit from a highly structured environment. The juvenile court noted a myriad of reasonable efforts had been made to prevent or eliminate the need for removal, including "Formal Probation (Operational), [Detention Alternative Program electronic monitoring and home detention], [Juvenile Detention Alternatives Initiative day and evening reporting program], Mental health assessment, drug and alcohol classes, random urinalysis testing, Project L.I.F.E, Substance Use Outpatient, weekly probation appointments, Deer Run Academy, school visits, home visit, [and] home detention[.]"

Appellant's App. Vol. II p. 49. Finally, the juvenile court acknowledged that, in his latest stint in the ACJC, S.C. had shown that he was "capable of following the rules when the environment is proper." Tr. Vol. II p. 16. The juvenile court awarded wardship of S.C. to DOC.

# Discussion and Decision

[9] S.C. contends that the juvenile court abused its discretion in ordering that he be committed to DOC. A juvenile court is accorded "wide latitude" and "great flexibility" in its dealings with juveniles. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). "[T]he choice of a specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will only be reversed if there has been an abuse of that discretion." *Id.* (citing *E.L. v. State*, 783 N.E.2d 360, 366 (Ind. Ct. App. 2003)). The juvenile court's discretion in determining a disposition is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition. *Id.* (citing *C.C. v. State*, 831 N.E.2d 215, 216–17 (Ind. Ct. App. 2005)).

[10] An abuse of discretion occurs when the juvenile court's action is "clearly erroneous" and against the logic and effect of the facts and circumstances before it. *Id.* The goal of the juvenile process is rehabilitation rather than punishment. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010). "Accordingly, juvenile courts have a variety of placement options for juveniles with delinquency problems, none of which are considered sentences." *Id.* Indiana Code § 31-37-

18-6(1)(A) provides that "[i]f consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that … is in the least restrictive (most family like) and most appropriate setting available[.]" "[T]he statute contains language that reveals that a more restrictive placement might be appropriate under certain circumstances." *J.S.*, 881 N.E.2d at 29 (citing *K.A. v. State*, 775 N.E.2d 382, 387 (Ind. Ct. App. 2002), *trans. denied*). Put another way, the law requires only that the disposition selected be the least restrictive disposition that is "consistent with the safety of the community and the best interest of the child." *D.S. v. State*, 829 N.E.2d 1081, 1085 (Ind. Ct. App. 2005).

[11] Under the circumstances of this case, we have little trouble concluding that S.C. has failed to establish that the juvenile court abused its discretion in ordering a DOC commitment. Since late 2015, S.C. has engaged in repeated delinquent behavior, including committing acts that would constitute felonies if S.C. were an adult and has had a total of eleven delinquency petitions filed against him. In this case, S.C. committed escape while on probation and electronic monitoring for a previous intimidation adjudication. Within weeks after completing his initial, sixty-five-day commitment to the ACJC and while again on probation, S.C. smoked and thrice tested positive for marijuana and was suspended from school for fighting. In June of 2017, S.C. absconded from electronic monitoring and was not located for approximately two weeks. Indeed, since the escape that led to the adjudication in this case, S.C.'s actions have led to three more delinquency petitions being filed against him. To put it

bluntly, over the past two years or so, S.C. has engaged in what appears to be continuous juvenile delinquency.

[12] The record also indicates that although S.C. has repeatedly been shown leniency, this approach has not been effective. The juvenile court detailed a lengthy list of less-restrictive options that have been attempted, to no lasting effect. Only one thing seems to have had the slightest positive influence on S.C.'s behavior, and that was commitment to the ACJC. Even then, S.C.'s previous, sixty-five-day commitment to the ACJC was followed very quickly by a return to delinquent behavior. Although S.C. argues that we should reverse and remand with instructions that he again be committed to the ACJC, the record indicates that any benefit S.C. may have received from previous commitments to the ACJC has not endured. Given the ultimate lack of success that less-restrictive options have had in curbing S.C.'s delinquent behavior, we cannot say that the juvenile court abused its discretion in ordering a commitment to the DOC. *See, e.g.*, *J.B. v. State*, 849 N.E.2d 714 (Ind. Ct. App. 2006) (concluding that juvenile court did not abuse its discretion by ordering commitment to DOC following a probation violation where fifteen-year-old juvenile had a years-long history of juvenile delinquency and substance abuse; had consistently rejected leniency by violating the terms of probation, committing new offenses, and continuing to abuse drugs; and probation department's predispositional report indicated that juvenile was likely to continue to commit offenses and recommended that he be placed in the DOC).

[13] We affirm the judgment of the juvenile court.

Robb, J., and Crone, J., concur.