## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 15 2019, 9:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Deborah Markisohn
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie H. Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| E.J.,<br>*Appellant-Respondent,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Petitioner.* | January 15, 2019<br><br>Court of Appeals Case No.<br>18A-JV-1204<br><br>Appeal from the<br>Marion Superior Court<br><br>The Honorable<br>Gary Chavers, Judge Pro Tempore<br><br>Trial Court Cause No.<br>49D09-1512-JD-2273 |

**Kirsch, Judge.**

[1]     E.J. appeals his placement with the Indiana Department of Correction ("the DOC") following the modification of his disposition after he admitted to

robbery while armed with a deadly weapon,[1] which would be a Level 3 felony if committed by an adult. E.J. raises the following issue for our review: whether the juvenile court abused its discretion when it ordered his placement in the DOC because he asserts it was not the least restrictive placement.

We affirm.

## Facts and Procedural History

E.J. first became involved with the juvenile court system at thirteen years old when he had a true finding for harassment, which would have been a Class B misdemeanor if committed by an adult. *Appellant's App. Vol. II* at 101. As a result of that true finding, E.J. was ordered to obtain a substance abuse evaluation and treatment and to participate in drug testing. *Id*. at 50. Several months later, the State filed a petition alleging that E.J. possessed marijuana, a Class B misdemeanor if committed by an adult, but the juvenile court did not authorize the filing of the petition. *Id*. at 49, 101. Two weeks later, the State rejected prosecution on another case involving allegations of criminal gang activity, a Level 6 felony if committed by an adult, and disorderly conduct, a Class B misdemeanor if committed by an adult. *Id*. at 49, 101.

When he was fourteen years old, and while on probation for his delinquency adjudication for harassment, E.J. was charged on December 14, 2015, with

---

[1] *See* Ind. Code § 35-42-5-1(a).

armed robbery, which would be a Level 3 felony if committed by an adult, carrying a handgun without a license, a Class A misdemeanor if committed by an adult, and dangerous possession of a firearm, a Class A misdemeanor if committed by an adult. *Id*. at 45. While in detention for these offenses, E.J. was placed in disciplinary isolation five times within the first few weeks and received incident reports for failing to follow staff direction, having contraband in his room, and disrespectful behavior. *Id*. at 71. Despite these incidents, E.J. was released from detention on electronic monitoring on January 8, 2016. On April 7, 2016, he entered an admission to having committed armed robbery, which would have been a Level 3 felony if committed by an adult. *Id*. at 113-15. The juvenile court placed E.J. on probation with a suspended commitment to the DOC. *Id*. at 113-17.

[5] Thereafter, the State filed eleven petitions to modify the disposition, six of which were found true. *Id*. at 41. As a result of the modifications, E.J. was ordered to participate in numerous programs and services, including formal probation, electronic monitoring, Youth Advocate Program, psychological assessments and evaluations, supervised release, parent-monitored curfew, drug testing, substance abuse evaluations, substance abuse counseling, suspended commitment to the DOC, mentoring, tutoring, and several other programs. *Appellant's App. Vol. III* at 151.

[6] Over the three years since E.J. was placed on probation, he has had repeated instances of drug use, almost all involving the use of marijuana. *Appellant's App. Vol. II* at 128, 131, 134, 200, 215, 220; *Appellant's App. Vol. III* at 27, 37-38.

E.J.'s first drug-related probation violation occurred in May 2016 where he tested positive for marijuana on a random drug screen. *Appellant's App. Vol. II* at 128. Two weeks later, he was arrested for possession of marijuana, a Class B misdemeanor if committed by an adult, although the case was not filed by the prosecutor. *Id.* The May 2016 violation resulted in sanctions, including taking bi-weekly drug tests until he had three consecutive negative tests and working with his service provider to set up a substance abuse evaluation and to complete its recommendations. *Id.*

[7] Over the next year, E.J. continued to use marijuana. In July 2016, he had a positive drug screen. *Id.* at 131. A substance abuse evaluation performed in August 2016 as part of a petition to modify E.J.'s disposition noted he had a moderate risk of substance use and a history of substance abuse and positive drug screens. *Id.* at 136-37. The evaluation recommended that E.J. receive substance abuse treatment. *Id.* at 140-41. On August 11, 2016, the probation department filed a petition for modification of disposition, which noted that E.J. was involved in an incident at Lawrence Central High School concerning a vehicle that contained loaded handguns and marijuana. *Id.* at 150. The juvenile court subsequently found the petition to modify was not true and closed the petition. *Id.* at 215.

[8] On December 2, 2016, the probation department filed a petition to modify disposition, which alleged that, in October 2016 and November 2016, E.J. tested positive for THC during random drug tests. *Id.* at 199-200. On

December 28, 2016, E.J. admitted to these positive drug screens and was ordered to participate in weekly substance abuse counseling. *Id*. at 215-19.

[9] In January 2017, E.J. again tested positive for marijuana. *Id*. at 220. During February and March 2017, E.J. was participating in substance abuse counseling with Offer a Hand Up during weekly sessions. *Appellant's App. Vol. III* at 2-3, 21. However by April 2017, E.J. again tested positive for marijuana. *Id*. at 27. E.J. told his probation officer that he knew it was wrong to use marijuana, but he was dealing with grief and loss caused by friends he had lost to gun violence. *Id*. E.J.'s treatment plan was modified to include twice weekly substance abuse sessions and grief counseling services. *Id*. at 28, 31.

[10] In June 2017, the probation department filed another petition to modify disposition, alleging that E.J. again tested positive for marijuana, and for the first time, had also tested positive for cocaine; he was subsequently taken into custody. *Id*. at 37. At that time, E.J. reported that his substance abuse counselor met with him at school and just gave him drug screens, but "barely spoke with him about substance abuse." *Id*. at 43. In July 2017, E.J. completed a substance abuse assessment and began attending weekly sessions with a new service provider. *Id*. at 66, 68. After several months, those services ended but he continued to receive home-based substance abuse services. *Id*. at 73. E.J. had one positive drug screen for marijuana in September 2017 but was clean at his next screen and continued to receive home-based substance abuse services. *Id*. In October 2017, E.J. had another positive drug screen for marijuana, and

the probation department filed for another verified petition for modification of disposition. *Id*. at 76, 86-87.

[11]     On November 9, 2017, the probation department filed another petition for modification of disposition, alleging that on November 8, 2017, E.J. was arrested, along with his mother and older brother, on drug-related charges. *Id*. at 97-98, 130. The prosecutor rejected filing any charges against E.J.; rather the modification was based on the positive drug screens. *Id*. at 98. E.J. was released into the custody of his maternal grandmother and again ordered to participate in services. *Id*. at 122-23. In December 2017, a psychological evaluation indicated a diagnosis of cannabis use disorder that was mild and in remission due to restricted access. *Id*. at 131. By January 2018, he was participating in substance abuse therapy two to three times a week, and at that time, probation recommended an intensive outpatient program to address his drug use. *Id*.

[12]     The most recent petition for modification was filed on March 7, 2018 and alleged that E.J. had violated the conditions of his suspended commitment to the DOC. *Id*. at 153-54. The juvenile court conducted a fact-finding hearing on April 12, 2018, and the parties reached an agreement under which E.J. admitted violating the conditions of his probation by testing positive for marijuana and amphetamines and in exchange the State dismissed all other pending matters. *Tr. Vol. II* at 4-5. At the subsequent modification of disposition hearing on April 27, 2018, the juvenile court ordered that E.J. be committed to the DOC with a recommended period of twelve months. *Id*. at

19; *Appellant's App. Vol. II* at 39-42. The juvenile court also ordered E.J. to participate in the Transition from Restrictive Placement ("TRP") program upon his release. *Tr. Vol. II* at 19; *Appellant's App. Vol. II* at 39. In doing so, the juvenile court reasoned:

> The . . . Probation Department, and the providers, and the Court has [sic] tried and tried and tried to try to make things to work. And first of all, we have to remember his charge under complaint four was an armed robbery, and yet community-based services were started way back then. He has had five modification petitions found true since then. There are others filed that were dismissed and a couple found not true. So, when I look at his, I'm wondering whether we did the right thing two years ago or not, and whether we did not adequately hold him accountable. I also note that despite all these community-based services, his latest Indiana Youth Assessment Disposition Tool is for a high-risk to re-offend. So, when I look at everything here . . . he will be committed to the [DOC] today for placement at Juvenile Correctional Facility. . . . We will order the TRP services, the Court will recommend a period of 12 months at the [DOC]. How long you're there however, is up to you and the [DOC]. The legal commitment's up to your 21st birthday unless sooner released, the average stay is usually about 6 to 9 months. . . . This is the least restrictive alternative consistent with public safety and best interest of the child.

*Tr. Vol. II* at 18-19. E.J. now appeals.

## Discussion and Decision

[13] E.J. argues that the juvenile court abused its discretion when it awarded guardianship of him to the DOC when there was a less restrictive disposition available. Specifically, E.J. contends that the juvenile court should have

ordered that he be placed in intensive, inpatient therapy, which would have "furthered public safety by helping [him] overcome his dependence on marijuana and would have been in the best interest of the child." *Appellant's Br*. at 21. He asserts that placement in the DOC is not the least restrictive placement and is not in his best interests because "it fails to address his continuing problem with drug use which underlies his delinquent behavior." *Id*.

[14] "A juvenile court is accorded 'wide latitude' and 'great flexibility' in its dealings with juveniles." *J.T. v. State*, 111 N.E.3d 1019, 1026 (Ind. Ct. App. 2018) (citing *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008)). The choice of a specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will only be reversed if there has been an abuse of that discretion. *Id.* "The juvenile court's discretion in determining a disposition is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least-harsh disposition." *Id.* An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before it. *Id.*

[15] The goal of the juvenile process is rehabilitation rather than punishment. *Id*. "'Accordingly, juvenile courts have a variety of placement choices for juveniles who have delinquency problems, none of which are considered sentences.'" *Id*. (quoting *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010)). Indiana Code section 31-37-18-6(1)(A) provides that "[i]f consistent with the safety of

the community and the best interest of the child, the juvenile court shall enter a dispositional decree that is in the least restrictive (most family like) and most appropriate setting available." "[T]he statute recognizes that in certain situations the best interest of the child is better served by a more restrictive placement." *J.S.*, 881 N.E.2d at 29 (citing *K.A. v. State*, 775 N.E.2d 382, 387 (Ind. Ct. App. 2002), *trans. denied*). The law requires only that the disposition selected be the least restrictive disposition that is "consistent with the safety of the community and the best interest of the child." *J.T.*, 111 N.E.3d at 1026 (citing *D.S. v. State*, 829 N.E.2d 1081, 1085 (Ind. Ct. App. 2005)).

[16] At the time of the disposition in this case, E.J.'s delinquency history consisted of true findings for harassment, a Class B misdemeanor if committed by an adult, and armed robbery, a Level 3 felony if committed by an adult, and multiple probation violations. Over the course of the three years since E.J. entered the juvenile court system at thirteen years old, several other allegations were rejected, dismissed, or not filed. *Appellant's App. Vol. III* at 177. During those three years, E.J. had numerous and repeated instances of drug use, almost all of which involved the use of marijuana. *Appellant's App. Vol. II* at 128, 131, 134, 200, 215, 220; *Appellant's App. Vol. III* at 27, 37-38. He had psychological and substance abuse assessments and had participated in substance abuse counseling of various kinds. *Appellant's App. Vol. II* at 136-37, 218-19, 223, 236; *Appellant's App. Vol. III* at 66, 68, 73, 131.

[17] Although E.J. contends that an inpatient substance abuse treatment program would be the least restrictive placement and that the juvenile court should have

ordered him placed there, he has neither shown that an inpatient program would have accepted him nor that there is a reasonable probability that an inpatient program would have benefitted him. These facts alone show that the juvenile court was not required to consider such treatment as the only possible disposition considering all of the other evidence presented. Consideration of E.J.'s marijuana use does not override other concerns necessitating a more restrictive placement. Indiana Code section 31-37-18-6 provides that the trial court is only required to consider the least restrictive placement *if* that placement comports with the safety needs of the community and the child's best interests. *See J.B. v. State*, 849 N.E.2d 714, 717-18 (Ind. Ct. App. 2006) (concluding that the trial court did not abuse its discretion when it committed the juvenile to the DOC because the less-restrictive placement suggested by him would have fallen short of meeting the community's safety needs). In *J.B.*, we stated, "Although we are sympathetic with those struggling to overcome drug addictions and in no way wish to diminish their plight, we are mindful of the impact their actions might have on community safety." *J.B.,* 849 N.E.2d at 718.

[18] Here, in continuing to commit new offenses and violate his prior suspended commitment to the DOC, E.J. has demonstrated a lack of respect for the law and an absence of understanding the seriousness of his conduct. He continued to commit new offenses, failed previous attempts at electronic monitoring and parent-monitored curfew, had numerous administrative hearings while on probation, used controlled substances, was potentially involved with a gang, was suspended from school for fighting, and posted pictures and videos of

himself on social media holding a firearm and consuming illegal substances. *Tr. Vol. II* at 11-14. The juvenile court previously ordered formal probation numerous times and formal probation with a suspended commitment to the DOC more than once. *Appellant's App. Vol. III* at 75-76. E.J.'s overall risk assessment to reoffend was high at the end of 2017 and it remained so in 2018. *Id*. at 134, 165. Although previously ordered to shut down his social media accounts, in February 2018, E.J. posted a video on social media that showed him smoking marijuana while driving, and he made a post soliciting the purchase of a firearm on social media in March of 2018. *Id*. at 154. Additionally, in March 2018, a petition for modification of disposition was filed after E.J. was charged with possession of marijuana after a traffic stop, in which several firearms were found in the vehicle. *Id*. at 162.

[19] Although we sympathize with E.J.'s substance abuse issues and acknowledge that he is struggling with significant problems, important concerns were raised regarding community safety and E.J.'s need for a secure and structured environment. These concerns were based on his continued rejection of less restrictive dispositional alternatives attempted by the juvenile court and the violent nature of the underlying crime of armed robbery and other dangerous behavior demonstrated by E.J. Our court has previously found that the commitment of a juvenile to the DOC was not an abuse of discretion where the juvenile had been offered numerous avenues for rehabilitation but had "continued to reoffend and disrespect the rule of law and his fellow citizens." *See J.J. v. State,* 925 N.E.2d 796, 802 (Ind. Ct. App. 2010), *trans. denied*.

[20] We conclude that it was reasonable for the juvenile court to find that the many services offered to E.J. had not been successful and that he posed a danger to both himself and to the community. Because of the serious nature of E.J.'s underlying offense of armed robbery, the volume of his subsequent criminal conduct, and the likelihood that he will reoffend, we find that the juvenile court was within its discretion to conclude that commitment to a less restrictive environment than the DOC was not in the best interest of E.J. or consistent with safety of the community. The juvenile court did not abuse its discretion when it ordered E.J.'s placement in the DOC.

[21] Affirmed.

Vaidik, C.J., and Riley, J., concur.