## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 10 2019, 10:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael G. Moore
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief,
Criminal Appeals
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.F., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner.* | December 10, 2019 <br><br> Court of Appeals Case No. 19A-JV-1209 <br><br> Appeal from the Sullivan Circuit Court <br><br> The Hon. Robert E. Hunley II, Judge <br><br> Trial Court Cause Nos. 77C01-1812-JD-49 77C01-1806-JD-32 |

**Bradford, Judge.**

# Case Summary

In July of 2018, then-fourteen-year-old J.F. was adjudicated a juvenile delinquent for committing what would be criminal mischief if committed by an adult. The juvenile court ordered that J.F. be placed in the Paddock View Residential Home in Grant County. While at Paddock View, J.F. punched another resident in the face, escaped while on a medical appointment, and was apprehended in possession of stolen property. J.F. admitted that he had committed what would be battery and criminal conversion if committed by an adult, and the juvenile court ordered him to be placed at Southwest Indiana Regional Youth Village ("SIRYV") in Knox County, eventually also ordering that he be placed in the male substance-abuse program. In April of 2019, the State petitioned to have J.F. placed in the Department of Correction ("DOC"), citing his removal from the male substance-abuse program. On April 16, 2019, the juvenile court ordered J.F. committed to DOC for an indeterminate amount of time. J.F. contends that the juvenile court abused its discretion in ordering a DOC placement. Because we disagree, we affirm.

# Facts and Procedural History

On June 12, 2018, then-fourteen-year-old J.F. was already on probation for having committed what would be, if committed by an adult, Level 5 felony intimidation and Class B misdemeanor criminal mischief when he punched a hole in the wall of his mother's house in Sullivan County. Based on this incident, the State alleged in cause number 77C01-1806-JD-32 ("Cause No.

32") that J.F. was a juvenile delinquent for committing what would be criminal mischief if committed by an adult. (App. Vol. II 60). On July 18, 2018, J.F. admitted to the allegation in Cause No. 32 (and leaving home without permission in another cause number), and the juvenile court ordered him committed to DOC for a fourteen-day diagnostic evaluation. (Appellant's App. Vol. II pp. 60–61). J.F.'s evaluation identified a number of concerns with his mental state, including ADHD, unspecified anxiety disorder, and multiple substance-abuse disorders. (App. Vol. II 88).

[3] On August 21, 2018, the juvenile court ordered J.F. to be placed in Paddock View. (App. Vol. II 153). On October 23, 2018, J.F. struck another Paddock View resident in the face. (App. Vol. II 173). On October 29, 2018, while at a medical appointment, J.F. escaped the custody of Paddock View staff. (App. Vol. II 176). When J.F. was found later that day, he was wearing a hat and gloves and riding a bicycle, all of which were stolen. (App. Vol. II 176-77). On October 31, 2018, the State petitioned to modify J.F.'s probation in Grant County, and he admitted to allegations of battery and criminal conversion on December 3, 2018, in cause number 77C01-1812-JD-49 ("Cause No. 49"). (App. Vol. III 1).

[4] On December 4, 2018, the Sullivan Circuit Court reinstated jurisdiction over J.F. (Appellant's App. Vol. III p. 5). On December 14, 2018, the juvenile court ordered J.F. to be placed at SIRYV in Knox County pending disposition of Cause No. 49. (App. Vol. II 184). On February 7, 2019, the juvenile court

modified J.F.'s probation to require that he be enrolled in the SIRYV male substance-abuse program. (Tr. Vol. II 9-10).

[5] On April 5, 2019, J.F.'s probation officer petitioned to modify J.F.'s placement to DOC, citing his removal from the male substance-abuse program. (App. Vol. III 27). At a hearing on April 8, 2019, J.F.'s probation officer testified that she had received nine incident and restraint reports from the male substance-abuse program and that J.F. had refused to participate in the program, was "aggressive and assaultive" toward other participants and staff, and had instructed another resident on the proper way to commit suicide by cutting his wrists. April 8, 2019, Tr. Vol. II p. 6. On April 16, 2019, J.F. admitted to violating the terms of his probation, and the juvenile court ordered him committed to DOC for an indeterminate amount of time. (Tr. Vol. IV 6, 10). In so doing, the juvenile court noted that "we have tried almost every option that we have available to us, uh, for whatever reason it just does not seem to be working." April 16, 2019, Tr. Vol. II p. 10.

# Discussion and Decision

[6] J.F. contends that the juvenile court abused its discretion in ordering him committed to DOC for an indeterminate time. A juvenile court is accorded "wide latitude" and "great flexibility" in its dealings with juveniles. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). "[T]he choice of a specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will only be reversed if there has been an

abuse of that discretion." *Id.* The juvenile court's discretion in determining a disposition is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least-harsh disposition. *Id.* An abuse of discretion occurs when the juvenile court's action is "clearly erroneous" and against the logic and effect of the facts and circumstances before it. *Id.*

[7] The goal of the juvenile process is rehabilitation rather than punishment. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010). "Accordingly, juvenile courts have a variety of placement options for juveniles with delinquency problems, none of which are considered sentences." *Id.* Indiana Code section 31-37-18-6(1)(A) provides that "[i]f consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that is in the least restrictive (most family like) and most appropriate setting available." "[T]he statute contains language that reveals that a more restrictive placement might be appropriate under certain circumstances." *J.S.*, 881 N.E.2d at 29. The law requires only that the disposition selected be the least restrictive disposition that is "consistent with the safety of the community and the best interest of the child." *D.S. v. State*, 829 N.E.2d 1081, 1085 (Ind. Ct. App. 2005).

[8] Considering J.F.'s history of delinquency and the number of less-restrictive placements that have failed to rehabilitate him, we conclude that the juvenile court did not abuse its discretion in placing J.F. at DOC. J.F. is a fifteen-year-old boy who has been in the juvenile justice system since 2016. (App. Vol. III

24).  The State first alleged J.F. (born in December of 2003) to be a juvenile delinquent in April of 2016, and, in addition to the battery and criminal conversion adjudications in this case, J.F. has prior adjudications for what would be Level 5 felony intimidation and two counts of Class B misdemeanor criminal mischief if committed by an adult and leaving home without permission.  (Appellant's App. Vol. III pp. 29–30).  J.F. has been on probation in Vigo, Clay, and Sullivan Counties, and, as of the disposition date in this case, J.F. had a battery allegation pending in Vigo County.  (Appellant's App. Vol. III p. 29).

[9]  Numerous efforts have been made to rehabilitate J.F. in a less-restrictive manner than placement at DOC, to no avail.  Over the years, the services offered to J.F. have included supervision through Sullivan County Community Corrections; supervised probation through Sullivan and Clay Counties; counseling through HARSHA, St. Vincent Behavioral, and Gibault; Vigo County Group Home; Bloomington Meadows; Valle Vista; in-home services with Mike McKamey of Lifeline; Hamilton Center; Dr. Gonzalez; DOC diagnostic evaluation; Paddock View Residential Center; Grant County Juvenile Center; detention at SIRYV; and the SIRYV male substance-abuse program.  (App. Vol. III 18-19).  None of these less-restrictive services or placements seem to have helped J.F., as he was most recently dismissed from the SIRYV male substance-abuse program following multiple physical altercations with staff and peers, including one incident where he broke a window and cut another resident's arm.  (Appellant's App. Vol. III p. 35).

SIRYV's clinical director noted J.F.'s "refusal to participate and engage even at the most basic levels, and his aggressive and assaultive behaviors towards youth and staff." Appellant's App. Vol. III p. 35. Now that many less-restrictive placements have failed to help J.F. with his mental problems, we cannot say that the juvenile court abused its discretion in trying DOC placement.

[10] J.F. argues that "the proximity and ability of his mother to participate was not taken into consideration when the juvenile court committed him to IDOC" and that the juvenile court abused its discretion in not continuing his placement at SIRYV. Appellant's Br. p. 11. First, the juvenile court is only required to consider the least restrictive placement if that placement aligns with community safety needs and the child's best interests. *J.B. v. State*, 849 N.E.2d 714, 717 (Ind. Ct. App. 2006). In any event, J.F.'s last placement at SIRYV had not been successful, as he had been dismissed from the male substance-abuse program. There is nothing in the record to indicate a second chance at SIRYV would turn out differently. The juvenile court had wide discretion to place J.F. according to his best interests, and given his history, placement at DOC for an indeterminate period did not constitute an abuse of discretion.

[11] The judgement of the juvenile court is affirmed.

Robb, J., and Altice, J., concur.