**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0207–JV–546.**

Court of Appeals of Indiana.

Feb. 20, 2003.

---

Katherine A. Cornelius, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

D.P. pled guilty to fraud, as a Class D felony, on a matter arising from an incident that occurred on March 19, 2002, and theft, as a Class D felony, on a separate matter arising from an incident that occurred on May 15, 2002. A disposition hearing was held, and the two cases were consolidated. Pursuant to the disposition hearing, the juvenile court awarded guardianship of D.P. to the Department of Correction for six months.

D.P. now appeals, alleging that the juvenile court abused its discretion by committing him to the Department of Correction, rather than using less-restrictive means of treatment, such as suspended commitment, as required by Indiana Code section 31–37–18–6. Although we are aware that the guardianship has expired, we conclude that the trial court abused its discretion, and we reverse.

### Facts and Procedural History

On March 19, 2002, fifteen-year-old D.P. took Willa Gaither's credit card while doing some chores for her. On the following day, D.P. used Gaither's credit card to obtain a room in a downtown Indianapolis hotel, and charged the room, meals, phone calls, and movies to Gaither's credit card. D.P. also used Gaither's credit card to purchase two cell phones and cell phone accessories.

Gaither's credit card company alerted the hotel of possible credit card fraud. On March 21, 2002, the hotel summoned the police, who went to the room rented by D.P. When asked for his credit card, D.P. produced Gaither's credit card. The police contacted Gaither, who checked in her purse and found that her credit card was missing. Subsequently, the police arrested D.P. for fraud.

On March 22, 2002, the State filed a petition alleging that D.P. was a delinquent child for committing fraud, an act that would be a crime if committed by an adult. On May 12, 2002, D.P. pled guilty to one count of fraud, a Class D felony. The trial court scheduled a July 23, 2002 hearing for final disposition.

On May 15, 2002, D.P. went to Gaither's home, took mail from her mailbox, and threw it away. Later that day, D.P.'s neighbor told Postal Inspector Richard Petry that she saw D.P. throwing away Gaither's mail. On the following day, Inspector Petry went to D.P.'s home to speak with him. D.P.'s mother agreed to allow Inspector Petry to speak with D.P.,

and D.P. was advised of his *Miranda* rights.

D.P. proceeded to tell Inspector Petry that he had taken Gaither's mail and had thrown it away. As a result, the State filed a petition alleging that D.P. was a delinquent child for committing theft, an act that would be a crime had it been committed by an adult. D.P. pled guilty to this offense on June 18, 2002.

On July 2, 2002, a disposition hearing was held, and D.P.'s two cases were consolidated. The Marion County Probation Department prepared a pre-dispositional report, which was introduced at the hearing, recommending suspended commitment to the Department of Correction.[1] The juvenile court declined to follow Probation's recommendation, and instead, awarded guardianship of D.P. to the Department of Correction for six months. D.P. now appeals.

### Discussion and Decision

D.P.'s sole claim on appeal is that the trial court abused its discretion when it awarded guardianship of him to the Department of Correction. Specifically, D.P. argues that the trial court improperly disregarded Indiana Code section 31–37–18–6(1)(A), because the trial court did not attempt to use less-restrictive means to accomplish his rehabilitation.

The choice of a specific disposition of a juvenile adjudicated a delinquent child is generally within the discretion of the juvenile court, subject to the statutory considerations of the welfare of the child, the community's safety, and Indiana Code's policy of favoring the least-harsh disposition. *E.H. v. State*, 764 N.E.2d 681, 684 (Ind.Ct.App.2002) *trans. denied* (citing *A.M.R. v. State*, 741 N.E.2d 727, 729 (Ind. Ct.App.2000)). A juvenile disposition will not be reversed absent a showing of an abuse of discretion. *E.H.* 764 N.E.2d at 684. An abuse of discretion occurs when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court, or against the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* (citing *In re L.J.M.*, 473 N.E.2d 637, 640 (Ind.Ct.App.1985)).

The juvenile court's discretion is circumscribed by the factors noted in Indiana Code section 31–37–18–6, which states:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>> (A) in the least restrictive (most family like) and most appropriate setting available; and,
>>
>> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and,
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Ind.Code § 31–37–18–6 (1998).

While we have the utmost respect for the difficult, daily decisions made in Indiana trial courts concerning juveniles and the judges who make those decisions, we believe this disposition is overly harsh, and as such, is contrary to the logic and effect of the facts before the court. We come to this conclusion because (1) the trial court's disposition fails to take into

---

1. The report also recommended additional considerations and full restitution.

account the special circumstances of this case, and (2) there is insufficient evidence to overcome Indiana's policy favoring the least-harsh disposition.

### A. *The special circumstances surrounding this case*

*E.H.* holds that an abuse of discretion occurs "when the trial court's action is clearly erroneous and against the logic and effect of the facts and 'circumstances' before the court." *E.H.*, 764 N.E.2d at 684 (citing *In re L.J.M.*, 473 N.E.2d at 640) (emphasis added). We believe that awarding the Department of Correction guardianship of D.P., despite the less-harsh disposition suggested by Probation, fails to account for the special circumstances surrounding D.P.'s life.

D.P. has a full-scale I.Q. of 65. He has attended six different schools, and was held back in his third and fourth grade school years. He has suffered two seizures, and is medicated with Ritalin for ADHD, a disorder whose symptoms include unusually impulsive behavior.[2] Although he was beginning his ninth grade school year at the time of the incidents in question, most of his performance equivalents were at the fifth-grade level, except for Arithmetic, which was at the third-grade level. D.P. had one prior contact with the juvenile justice system at age ten for a battery. He successfully completed probation for that earlier conduct.

Under these facts and circumstances, we believe the decision to award the guardianship of D.P. to the Department of Correction is overly-harsh.

### B. *Indiana's least-harsh disposition policy*

*E.H.* also holds that the juvenile court's discretion is subject to Indiana's policy favoring the least-harsh disposition. *E.H.*, 764 N.E.2d at 684. The State cites *K.A. v. State*, 775 N.E.2d 382, 386–87 (Ind.Ct.App. 2002) *trans. denied*, and *In re Ort*, 407 N.E.2d 1162, 1164 (Ind.Ct.App.1980), as standing for the proposition that, though there may be less-restrictive alternatives available to D.P., Department of Correction placement is nonetheless appropriate. State correctly points out that both cases upheld the placement of a juvenile in the Department of Correction despite the availability of less-restrictive alternatives; however, D.P.'s conduct does not rise to the level of the juveniles in *K.A.* and *Ort.*

In *K.A.*, the court upheld Department of Correction placement, despite the availability of less-harsh alternatives, because K.A. had received several chances to reform her behavior and failed to respond to these less-harsh opportunities. *K.A.*, 775 N.E.2d at 386. K.A. was placed on probation, kept violating probation despite repeated trial court warnings, and was specifically warned of Department of Correction placement. *Id.* at 387.

D.P.'s behavior is distinguishable from that of K.A.'s behavior. D.P. was not on probation, was not warned of Department of Correction placement for probation violations, and unlike K.A., did not show an unresponsiveness to "less-restrictive alternatives." Quite the contrary, D.P.'s only other contact with the juvenile justice sys-

---

**2.** The trial judge asked D.P. "if [he] knew what [he] was doing," to which D.P. responded with "yes, your honor." Although this indicates that D.P. knew what he was doing, it does not indicate that he fully understood the consequences of his actions, nor does it address his predisposition to impulsive behav-

ior. Although these circumstances are not enough to provide D.P. with a defense to the crimes charged, they are circumstances that need to be taken into account when determining whether D.P. should become a ward of the Department of Correction.

tem was successful. He completed his probation and stayed out of trouble for five years.[3]

Ort affirmed the commitment to the Department of Correction of a juvenile, who was found delinquent for resisting law enforcement and fleeing from the police, despite the court's admission that less-restrictive treatment was available. Ort, 407 N.E.2d at 1164. The Ort Court based its holding on the trial court's comments stating, "[Ort] keeps coming in, coming in, and coming in ... he is kind of a regular here ... [Ort has been involved in a] rather substantial protracted period of criminal misconduct, some of it minor, and some of it not minor." Id. at 1165.

D.P.'s commission of two crimes in a short period of time hardly amounts to the sustained period of criminal conduct referred to in Ort. Without this sustained and protracted period of conduct referred to in Ort, there is little evidence to suggest that D.P. would not respond to the probation that proved unsuccessful in Ort.

Because D.P.'s conduct does not rise to the level of repetitive and serious misconduct of that found in K.A. and Ort, we believe that the trial court should have followed Indiana's public policy of favoring the least-harsh disposition. See E.H., 764 N.E.2d at 684. Until D.P. demonstrates that he will not respond positively to probation, the trial court should institute the less-harsh disposition of suspending D.P.'s confinement with the Department of Correction.

## Conclusion

Because the trial court did not adequately consider the circumstances surrounding D.P.'s diminished cognitive capacity and impulsive behavior, and because it has not been demonstrated that D.P. will not respond to probation in a positive fashion, the least-harsh alternative of suspending D.P.'s confinement with the Department of Correction should have been followed.

Reversed.

RILEY, J., concurs.

BAKER, J., dissents with opinion.

BAKER, Judge, dissenting.

I respectfully dissent from the majority's determination that D.P.'s conduct does not warrant a commitment to the Department of Correction (DOC). Op. at 771. I believe the juvenile court was within its discretion in awarding guardianship of D.P. to the DOC under the circumstances of this case.

Undergirding the majority's decision is the belief that "D.P.'s conduct does not rise to the level of repetitive and serious misconduct of that found in K.A. and Ort." Op. at 771. However, the juvenile court in this case could have reasonably concluded that commitment to the DOC was "consistent with the safety of the community and the best interest of the child" because D.P. had not been dissuaded from criminal activity by the juvenile justice system. Ind. Code § 31–37–18–6(1)(A). After D.P. admitted that he had committed credit card fraud, the juvenile court released D.P. to

---

**3.** Some may argue that D.P.'s commission of the May 15, 2002 violation, while awaiting the disposition of his March 19, 2002 violation, shows an inability to respond in a positive fashion to the juvenile justice system. However, we note that, unlike K.A. and Ort, when D.P. committed the May 15, 2002 violation, the juvenile justice system had yet to place

him on probation. D.P. has demonstrated that, when on probation, he tends to respond to treatment. Given D.P.'s past response to probation, the trial court should allow D.P. the benefit of this "less-restrictive treatment" until D.P. proves to the trial court that he is unwilling to respond in a positive fashion.

his parents pending a further hearing. Only two days later, D.P. returned to the home of the victim of his prior crime and stole her mail despite the fact that the juvenile court had ordered him to obey all laws and had placed him on home detention. Thus, not only did D.P. commit another crime against the same victim, he did so in contravention of the juvenile court's order. Therefore, it is apparent to me that D.P. was not deterred by the juvenile justice system.

It is undisputed that D.P. "re-offended" within forty-eight hours of appearing before the juvenile court. Those actions demonstrate D.P.'s resistance to less-harsh methods of disposition. Thus, the juvenile court was within its discretion in ordering the more severe disposition of commitment to the DOC.

For these reasons, I would affirm the juvenile court's award of guardianship to the DOC.