796 N.E.2d 360 (2003)
R.S. and S.I., Appellants-Respondents,
v.
STATE of Indiana, Appellee-Petitioner.
No. 49A05-0303-JV-119.
Court of Appeals of Indiana.
September 26, 2003.
Rehearing Denied November 26, 2003.
*361 Victoria Ursulskis, Indianapolis, IN, Attorney for Appellant R.S.
Katherine A. Cornelius, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant S.I.
Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
BAILEY, Judge.

Case Summary
In this consolidated appeal, R.S. and S.I. each appeal the adjudication that he is a juvenile delinquent, having committed acts that would constitute involuntary manslaughter and battery if committed by an adult. We affirm in part and reverse in part and remand for a dispositional hearing.

Issues
R.S. and S.I. present three issues for appeal, two of which we address:
I. Whether there is sufficient evidence to support a determination that either R.S. or S.I. committed an offense that would be involuntary manslaughter if committed by an adult;
II. Whether the juvenile court's dispositional orders awarding guardianship of R.S. and S.I. to the Department of Correction are an abuse of discretion.

Facts and Procedural History
On September 29, 2002, R.S., S.I. and four of their friends walked to a convenience store near Tibbs Avenue and North Street in Indianapolis. As the group headed home, Joseph Sullender ("Sullender"), who was pulling weeds in his yard, yelled at R.S. to "get off of his wall." (Tr. 65.) Sullender pursued R.S., words were exchanged, and a physical altercation ensued.
R.S. and S.I. struck and kicked Sullender, inflicting four superficial injuries (a shoulder scrape, a back abrasion and an injury beneath each eye). As the group walked away, Sullender pursued them again, yelling: "Is this somebody's milk jug?" (S.I. Tr. 71.) Receiving no reply, Sullender turned around and walked toward his house. One of Sullender's neighbors witnessed the altercation, but did not summon assistance.
Approximately fifteen minutes later, paramedic William Callahan responded to an emergency call and found Sullender slumped down in his yard, unresponsive and lacking a pulse. Sullender, a diabetic who had been in the throes of a heart attack for the preceding two days, apparently without suffering the symptom of angina, was pronounced dead at the scene.[1]
On September 30, 2002, the State filed a Notice of Violation of Probation by R.S. On October 1, 2002, the State filed a petition alleging delinquency, alleging R.S. had committed acts that would be involuntary manslaughter and battery if committed by an adult. On October 2, 2002, the State filed a petition alleging delinquency, alleging S.I. had committed acts that would be *362 involuntary manslaughter and battery if committed by an adult.
On February 10, 2003, the juvenile court conducted a joint fact-finding hearing. At its conclusion, the juvenile court found that R.S. and S.I. had committed acts that would be involuntary manslaughter and battery if committed by adults. The juvenile court awarded guardianship of R.S. to the Indiana Department of Correction until he attains the age of twenty-one, with the recommendation of commitment in a correctional facility for children.[2] The juvenile court awarded guardianship of S.I. to the Indiana Department of Correction, with placement left to the discretion of the Department. R.S. and S.I. now appeal, challenging the determinations as to involuntary manslaughter, and the dispositional orders. They do not challenge the determinations as to battery.

Discussion and Decision

I. Sufficiency of the Evidence
R.S. and S.I. contend that there is insufficient evidence to support a determination that either of them committed an act that would be involuntary manslaughter if committed by an adult. Specifically, R.S. and S.I. claim that their conduct was not the direct and proximate cause of Sullender's death.
A finding by a juvenile court that a child committed a delinquent act, or that an adult committed a crime, must be based upon proof beyond a reasonable doubt. IND.CODE § 31-37-14-1. Pursuant to Indiana Code Section 35-42-1-4, involuntary manslaughter is defined, in pertinent part, as follows:
(c) A person who kills another human being while committing or attempting to commit:
(3) battery; commits involuntary manslaughter, a class C felony.
A battery underlying an involuntary manslaughter conviction must proximately cause the death. McEwen v. State, 695 N.E.2d 79, 86 (Ind.1998) (citing Elliott v. State, 450 N.E.2d 1058, 1063 (Ind.Ct.App. 1983)). A finding of proximate cause embodies a value judgment as to the extent of the physical consequences of an action for which the actor should be held responsible, thus, proximate cause inquiries are often couched in terms of foreseeability. Gibbs v. State, 677 N.E.2d 1106, 1109 (Ind.Ct. App.1997). A defendant will be held criminally responsible for the death of another if the variation between the results intended or hazarded and the result actually achieved is not so extraordinary that it would be unfair to hold the defendant responsible for the actual result. Ford v. State, 521 N.E.2d 1309, 1311 (Ind.1988). See, e.g., Votre v. State, 192 Ind. 684, 138 N.E. 257 (1923) (providing whiskey to teenager who had a weakened heart and died of an intoxication-induced heart attack was not manslaughter because death is not the usual or probable result of taking a drink of liquor).
Dr. Dean Hawley, the forensic pathologist who performed the autopsy on Sullender's body, testified concerning the cause of his death as follows:
Dr. Hawley: Judge, in my opinion within reasonable medical certainty, Joseph Sullender died as the result of atherosclerotic coronary artery disease.
Question: And could you explain what led you to that conclusion?
Dr. Hawley: The examination of the body of Joseph Sullender determined the presence of some injuries on the outside of the body. Those injuries are blunt force injuries. Injuries that were *363 created by an impact into the body, with an object that did not penetrate the skin, but caused injury by blunt external impact. In addition, inside the body, the finding of severe atherosclerosis of coronary arteries, including an inclusion [sic] of the right coronary artery was present. The occlusion of the coronary artery had resulted in myocardial infarct, and that infarct extensively damaged the muscle of the left ventricle of the heart. In addition to that acute damage of the heart, there was also an old healed fibrotic infarct, that also involved the left ventricle.
Question: And, so is it fair to say that Mr. Sullender suffered a heart attack?
Dr. Hawley: He had a heart attack, yes.
Question: And in your medical opinion, are you able to make a determination when that heart attack would have started?
Dr. Hawley: Yes.
Question: And when, in your opinion, would it have started?
Dr. Hawley: First of all, Judge, he had a heart attack that was at least months old. Then he had a second heart attack, and that second heart attack was at least two days in progress, at the time that he died.
(S.I. Tr. 40.) Dr. Hawley classified the "manner of death" as homicide.[3] He then elaborated: "The presence of the heart disease, and the progression of that heart disease over the past two days, had left the heart in a stage of damage where any increase in heart output, caused by excitement or physical stress, could have provoked an arrhythmia and a stoppage of the heart beat." (Tr. 42.) Dr. Hawley opined that Sullender's death was imminent regardless of the altercation. However, Dr. Hawley opined that the beating shortened Sullender's life, although he could not estimate by how much.
In sum, Dr. Hawley's testimony established that Sullender, a forty-seven year-old diabetic, had suffered extensive heart deterioration prior to the altercation with the teenagers. In all probability, the heart attack in progress would have proved fatal. Only a timely heart transplant could be expected to avert imminent death. In Dr. Hawley's opinion, any level of stress could have caused a fatal heart arrhythmia.[4] For example, ultimately fatal stress could have resulted from weeding, walking, pushing, yelling or arguing. It could also have resulted from the infliction of the superficial, and otherwise non-life-threatening, physical injuries.
Dr. Hawley's testimony indicates that the beating did not trigger Sullender's heart attack, but it could have, independently or in concert with other stressors, caused a life-shortening arrhythmia in the midst of a likely fatal heart attack. As such, this case is distinguishable from that upon which the State relies, in which the evidence was sufficient to support a conviction for involuntary manslaughter where the defendant beat a transient who was predisposed to a heart attack, and a medical expert testified that the stress induced thereby "directly caused the victim to suffer a fatal heart attack." Schlossman v. *364 State, 105 Md.App. 277, 659 A.2d 371, 375 (Md.Ct.Spec.App.1995) (overruled on other grounds by Bailey v. State, 355 Md. 287, 734 A.2d 684 (Md.1999)).[5]
Under the circumstances, there is a lack of foreseeability that the infliction of four superficial abrasions would kill a person. Accordingly, the variation between the results intended or hazarded and the actual result of potentially hastening an in-progress heart attack toward fatality is so extraordinary that R.S. and S.I. cannot fairly be considered to have "killed" Sullender.
As such, we vacate the determination that R.S. and S.I. committed an act that would be involuntary manslaughter if committed by an adult.[6]

II. Dispositional Orders
Finally, R.S. and S.I. contend that the juvenile court's dispositional orders awarding their guardianship to the Indiana Department of Correction are punitive and rest upon the erroneous premise that R.S. and S.I. present a danger to the community because they killed Sullender.
The choice of a specific disposition of a juvenile adjudicated a delinquent child is generally within the discretion of the juvenile court, subject to the statutory considerations of the welfare of the child, the community's safety, and the policy of favoring the least-harsh disposition. D.P. v. State, 783 N.E.2d 767, 769 (Ind.Ct.App. 2003), reh'g. denied. A juvenile disposition will not be reversed absent a showing of an abuse of discretion. Id. An abuse of discretion occurs when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court, or against the reasonable, probable, and actual deductions to be drawn therefrom. Id.
Here, the dispositional alternative selected by the juvenile court clearly rests upon the erroneous premise that R.S. and S.I. killed Sullender. In light of the Code policy favoring the least-harsh disposition, we reverse the dispositional orders and remand to the juvenile court for consideration of the appropriate rehabilitative disposition for juveniles who committed an offense that would be battery if committed by an adult.
Affirmed in part, reversed in part and remanded.
KIRSCH, J., and VAIDIK, J., concur.
NOTES
[1] Dr. Hawley testified that diabetics do not always experience chest pain (angina) during a heart attack.
[2] R.S. was then aged sixteen.
[3] This is merely a coroner's classification, as explained by Dr. Hawley. Dr. Hawley testified that he must, in the completion of the autopsy, "certify the manner of death" as one of the following: natural disease, accidental injury, suicide, homicide, or undetermined. (Tr. 56.)
[4] Dr. Hawley described an arrhythmia as a "difference from the normal heart beat." (R.S. Tr. 38.) In arrhythmia, the heart beats irregularly and incompletely. The heart rate is often rapidly accelerated, and the blood output from the heart deteriorates. The person may go into shock and die.
[5] Schlossman and his accomplices, armed with baseball bats, set out to clear woods of "bums." Id. at 373. They poked the victim with sticks, urinated on him, poured paint on him, threw stones at him, rolled him in a ditch and kicked dirt and trash on him, trapping him in the ditch. Id.
[6] We have vacated the manslaughter finding and only the battery finding survives. Thus, we need not address the Double Jeopardy issue raised by R.S. and S.I.