## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 13 2020, 10:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark F. James
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| M.R., A Child Alleged to Be a Delinquent,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 13, 2020<br><br>Court of Appeals Case No.<br>19A-JV-2502<br><br>Appeal from the St. Joseph Probate Court<br><br>The Honorable Jason Cichowicz, Judge<br><br>Trial Court Cause No.<br>71J01-1609-JD-272<br>71J01-1712-JD-456 |

**Tavitas, Judge.**

# Case Summary

M.R. appeals the juvenile court's modification of its dispositional order ordering M.R. to be committed to the Department of Correction ("DOC"). We affirm.

# Issue

The sole issue on appeal is whether the juvenile court abused its discretion when it committed M.R. to the DOC.

# Facts

M.R. was born in December 2005. On September 26, 2016, when M.R. was eleven years old, the State filed a petition alleging that M.R. committed an offense, in St. Joseph County, that would constitute disorderly conduct, a Class B misdemeanor, if committed by an adult. M.R. admitted the allegation on March 29, 2017. Pursuant to an admission agreement with the State, the juvenile court placed M.R. on probation. In exchange for M.R.'s admission, the State agreed to dismiss four juvenile delinquency referrals against M.R.[1] The admission agreement provided, in part, that M.R. should obey the law.

On May 23, 2017, the probation department filed its first modification report after M.R. committed multiple violations[2] at the Marshall Intermediate School

---

[1] The dismissed causes were M.R's thirteenth, fifteenth, sixteenth, and seventeenth delinquency referrals.

[2] M.R. committed these violations between March 31 and May 17 of 2017.

including: (1) threatening to shoot or batter classmates and staff; (2) striking a teacher; (3) initiating fights and fighting; (4) disrupting classrooms; and (5) prompting a teacher to remove other students from the classroom for their safety. M.R. admitted the allegations on June 13, 2017; and the juvenile court ordered M.R. to continue on probation, complete Cross System Care Coordination[3] through the Department of Child Services ("DCS"), and serve up to sixty days of house arrest through Trust House Arrest.[4]

[5] On October 18, 2017, the probation department filed its second modification report alleging that M.R. committed further school violations including: (1) harassing a classmate; (2) telling his teacher: "You are a b****. Go kill yourself"; (3) engaging in tumultuous, disruptive, and inappropriate behavior; (4) battering a teacher; and (5) vandalizing property. Appellant's App. Vol. II p. 23. On November 7, 2017, the juvenile court placed M.R. on home detention in "[the j]uvenile [c]ommunity [c]orrections [p]rogram[.]" *Id*. at 28.

[6] The probation department filed its third modification report on November 13, 2017, after M.R. violated curfew, flashed a gang sign, and threatened to kill a student. The next day, the juvenile court conducted an emergency modification hearing, and M.R. admitted the foregoing allegations. The juvenile court

---

[3] Cross System Care Coordination is a home-based program that "provide[s] a single comprehensive system of care that allows children and families in the child welfare and/or juvenile probation system(s) with complex needs to receive culturally competent, coordinated, and uninterrupted care." https://www.in.gov/dcs/files/Cross%20System%20Care%20Coordination.pdf (last visited Feb. 27, 2020).

[4] Trust House Arrest is a home detention program that is employed by St. Joseph County community corrections wherein juvenile offenders retain more freedom and are not GPS-monitored.

committed M.R. to the St. Joseph County Juvenile Justice Center for ten days, suspended, and imposed GPS-monitored home detention.

[7] On December 15, 2017, M.R. was arrested for committing offenses that would constitute intimidation, a Level 6 felony, and disorderly conduct, a Class B misdemeanor, if committed by an adult. On January 16, 2018, regarding his recent arrest, M.R. admitted that he threatened to "air out [his] school bus";[5] and that he told the arresting officer that he would "blow her brains out [and] slit her throat[.]" *Id*. at 55. The juvenile court placed M.R. on strict and indefinite probation and committed M.R. to the Transitions Academy.[6]

[8] On May 21, 2018, the probation department filed its fourth modification report after M.R. was written up nearly seventy times at the Transitions Academy. The juvenile court conducted an emergency modification hearing on May 22, 2018, and ordered M.R. to continue with probation and counseling.

[9] On June 12, 2018, the juvenile court ordered M.R. to be placed in the Lakeside Academy in Michigan. Upon his successful completion of the placement on or about August 15, 2019, Benchmark Family Services placed M.R. in foster care. Approximately four days later, M.R. was removed from the foster placement because M.R. refused to remove a gang sign from his person, rejected his court-

---

[5] "Air[ing] out" is a slang reference to shooting a firearm in an occupied space.

[6] Transitions Academy is a structured twenty-four-hour behavioral health residential program for adolescents.

ordered medication, attempted to leave the foster home without permission, and grabbed the foster parent's arm. The probation department filed its fifth modification report on August 22, 2018, after "[M.R.] was deemed a [p]lacement [f]ailure at [f]oster [c]are." Tr. Vol. II p. 20.

[10] On October 1, 2018, the juvenile court conducted yet another modification hearing.[7] Dayna Carire of the St. Joseph County probation department recommended placement in the DOC. The State argued: "[ ] there [ ] were forty [ ] incident reports[,]" including "gang [ ] references and threats"; M.R. failed in less-restrictive placements; and the State was "not aware of another alternative." *Id.* at 19. At the close of the evidence, the juvenile court stated:

> . . . [T]he circumstances that placed [M.R.] in various places . . . may or may not have been his fault.[8] But . . . [M.R.'s] not having a place to go to [ ] is really not an issue. [ ] [T]here could be a fantastic place that was ready and willing to take him right now, and that would not solve the problem [which is that] I'm looking at a young man, who[se] behavior . . . has been atrocious. And that is [ ] a young man who is only thirteen (13) years old, and we are on case 14 and case 21. And twenty of those twenty-one [ ] are delinquency cases. This has to end. Any less restrictive Placement is inconsistent with this community's safety.

---

[7] At the time of the October 2018 modification hearing, M.R. was nearly thirteen years old.

[8] The record reveals that M.R. was removed from his mother's home because M.R.'s mother could not provide the structure that M.R. required.

*Id.* at 26. The juvenile court committed M.R. to the DOC. *See* Appellant's App. Vol. II pp. 105-06. M.R. now appeals.

## Analysis

M.R. argues that the juvenile court abused its discretion in remanding him to the DOC because "[l]ess restrictive alternatives were available[.]" Appellant's Br. p. 7. A juvenile court is accorded "wide latitude" and "great flexibility" in its dealings with juveniles. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). "[T]he choice of a specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will only be reversed if there has been an abuse of that discretion." *Id.* The juvenile court's discretion in determining a disposition is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least-harsh disposition. *Id.* An abuse of discretion occurs when the juvenile court's action is "clearly erroneous" and against the logic and effect of the facts and circumstances before it. *Id.*

The goal of the juvenile process is rehabilitation, not punishment. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010). "Accordingly, juvenile courts have a variety of placement options for juveniles with delinquency problems, none of which are considered sentences." *Id.* Indiana Code Section 31-37-18-6(1)(A) provides that: "[i]f consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that is in the least restrictive (most family like) and most appropriate setting available."

"[T]he statute contains language that reveals that a more restrictive placement might be appropriate under certain circumstances." *J.S.*, 881 N.E.2d at 29. The law requires only that the disposition selected be the least restrictive disposition that is "consistent with the safety of the community and the best interest of the child." *D.S. v. State*, 829 N.E.2d 1081, 1085 (Ind. Ct. App. 2005).

[13] M.R. analogizes the instant facts to those in *D.P. v. State*, 783 N.E.2d 767 (Ind. Ct. App. 2003). In *D.P.*, we reversed the juvenile court's "overly harsh" commitment of D.P. to the DOC because: (1) D.P. had "one prior contact with the juvenile justice system"; (2) D.P. suffered from "diminished cognitive capacity and impulsive behavior"; (3) D.P. "did not show an unresponsiveness to 'less-restrictive alternatives'"; and (4) D.P.'s conduct "d[id] not rise to the level of repetitive and serious misconduct[.]" *D.P.*, 783 N.E.2d at 771.

[14] Here, M.R.'s juvenile criminal record, unlike D.P.'s, is "atrocious" and warrants a more restrictive placement. *See* Tr. Vol. II p. 26; *see J.S.*, 881 N.E.2d at 29. Attempts by the juvenile court, probation officials, and DCS to place M.R. in less-restrictive placements failed to rehabilitate M.R., who continued to engage in violent and/or criminal activity and to flout the rules of his school, probation, community corrections, and foster care placements. The juvenile court did not abuse its discretion when it committed M.R. to the DOC—a determination that is "consistent with the safety of the community and the best

interest of the child."[9]  *See D.S.*, 829 N.E.2d at 1085; *see D.E. v. State*, 962 N.E.2d 94, 97 (Ind. Ct. App. 2011) (finding no abuse of discretion from juvenile's commitment to the DOC when juvenile was on probation at time of delinquent acts; violated probation once before; and was suspended or expelled from schools).

## Conclusion

The juvenile court did not abuse its discretion in committing M.R. to the DOC. We affirm.

Affirmed.

Najam, J., and Vaidik, J., concur.

---

[9] The probation department's modification reports assess M.R. as follows: "[M.R.] displays behavior that threatens the safety of others at school"; "[M.R.] does not display pro-social skills nor does he have the cognitive abilities . . . to de-escalate his dangerous behavior"; "[p]robation feels the court's intervention is necessary to ensure [M.R.]'s safety"; "[M.R.]'s actions pose a danger to himself and others"; and "[M.R.] has unfortunately demonstrated a complete lack of treatment amenability, given the services he has been offered."  Appellant's App. Vol. II pp. 36, 45, 99.