## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 15 2020, 9:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Katherine N. Worman
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney L. Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| A.M.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 15, 2020<br><br>Court of Appeals Case No.<br>20A-JV-442<br><br>Appeal from the Vanderburgh<br>Superior Court<br><br>The Honorable Brett J. Niemeier,<br>Judge<br><br>The Honorable Renee A.<br>Ferguson, Magistrate<br><br>Trial Court Cause No.<br>82D04-2001-JD-11 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, A.M., appeals the juvenile court's decision to commit her to the Department of Correction (DOC), following her admission to domestic battery, which would be a Class A misdemeanor if committed by an adult.

We affirm.

# ISSUE

A.M. presents one issue on appeal, which we restate as: Whether the juvenile court abused its discretion when it committed A.M. to the DOC.

# FACTS AND PROCEDURAL HISTORY

On January 3, 2020, the State filed a delinquency petition, alleging that A.M. had committed what would be Class A misdemeanor domestic battery, a Class A misdemeanor intimidation, and a Class B misdemeanor disorderly conduct if committed by an adult. On January 15, 2020, during a hearing, A.M. admitted that when her mother attempted to take her cellphone away, she "went to grab it from her" and caught her mother's hair in the process. (Transcript Vol. II, p. 11). Based on this admission, the juvenile court adjudicated A.M. to be delinquent for having committed what would be a Class A misdemeanor domestic battery if committed by an adult. The State agreed to dismiss the other Counts. During this proceeding and following her admission, A.M. was advised not to speak out of turn, to which she replied, "I don't care what you say, honestly. If I don't listen to my Mom, what makes you think I'm gonna listen to you." (Tr. Vol. II, p. 13). The juvenile court cautioned A.M. that she

would be removed from the hearing if she refused to follow directions, to which A.M. responded, "well let's go then." (Tr. Vol. II, p. 13). A.M. was subsequently removed from the proceeding.

[5] In preparation for the dispositional hearing scheduled for January 29, 2020, a predispositional report was prepared by the probation department. A.M.'s mother reported that she has a strained relationship with her daughter and indicated that A.M. is physically and verbally aggressive toward her younger brother. A.M.'s behavior becomes worse when mother attempts to impose "consequences." (Appellant's App. Vol. II, p. 51). She advised that A.M. needed help, but would "only get it if she's forced" and admitted that A.M. was "out of her control." (Appellant's App. Vol. II, p. 44). Mother warned that she believed A.M. was prostituting herself or engaged in sex trafficking because she had found a profile for A.M. on a website that appeared to offer "companionship and sexual favors." (Appellant's App. Vol. II, p. 52). Mother located more than twenty videos on A.M.'s cellphone in which A.M. was engaged "in sex acts with different men in every video" and nude photographs of A.M. in which she was engaged in "lewd and sexual acts." (Appellant's App. Vol. II, p. 52).

[6] The probation department also compiled a list of A.M.'s juvenile delinquent history, which was comprised mainly of battery adjudications and leaving home without permission. Including the instant offense, A.M. has received twenty referrals to juvenile court. Of these twenty referrals, ten occurred during 2019,

which resulted in two juvenile adjudications. A.M. had been released from the Youth Care Center approximately a month prior to the instant charge.

[7] A.M. has been diagnosed with Reactive Attachment Disorder in 2015, and, at a later time, with Conduct Disorder and Impulse Control and Narcissistic Personality Disorder. Based on these diagnoses and "due to her prior failed placements and lack of desire to change or improve," A.M. was placed in the Indiana Girls School. (Appellant's App. Vol. II, p. 53). To treat her mental health issues, A.M. received inpatient services from Child's Place, Resource, Harsha Behavioral Center, and Youth Villages. During these placements, A.M. received individual therapy, group therapy, and family therapy. She was placed on psychiatric medication to treat her symptoms. However, when she committed the instant domestic battery, A.M. had not "engaged in any therapeutic services and [was] not currently on any medication." (Appellant's App. Vol. II, p. 53).

[8] On January 29, 2020, following argument by the parties, the juvenile court ordered A.M. committed to the DOC. The juvenile court noted that A.M. had received "prior DCS services, prior probation, secure detention at the Youth Care Center, DOC commitments, prior acute hospitalization at Deaconess Cross Pointe, inpatient services from Child's Place, inpatient services at Resource, inpatient services from Harsha Behavioral, and inpatient services from Youth Villages in Memphis, Tennessee." (Tr. Vol. II, pp. 19-20). Despite these services, the juvenile court took note of A.M.'s admission that she was unable to function in her home. The court found that A.M. "engage[d] in

behavior that is dangerous to her" and "may have been . . . a victim of human trafficking." (Tr. Vol. II, p. 20). Accordingly, the juvenile court concluded that A.M. presented a "significant danger to herself" and the only remaining option before the juvenile court was commitment at the DOC. (Tr. Vol. II, p. 20).

[9] A.M. now appeals. Additional facts will be provided if necessary.

## DISCUSSION AND DECISION

[10] A.M. contends that the juvenile court abused its discretion when it committed her to the DOC as it was not the least restrictive placement option available. The disposition of a juvenile adjudicated a delinquent is a matter committed to the sound discretion of the juvenile court, subject to the welfare of the child, the safety of the community, and the policy favoring the least harsh disposition. *E.H. v. State*, 764 N.E.2d 681, 684 (Ind. Ct. App. 2002). On review, we may overturn the juvenile court's disposition order if we find that the court abused its discretion, which occurs if its actions are clearly against the logic and effect of the facts and circumstances before it or the reasonable inferences that may be drawn therefrom. *Id*.

[11] As an initial matter, we observe that the purpose of the juvenile process is vastly different from the criminal justice system. *Jordan v. State*, 512 N.E.2d 407, 408 (Ind. 1987). Specifically, the goal of the juvenile process is rehabilitation so that the youth will not become a criminal as an adult. *Id*. Accordingly, juvenile courts have a variety of placement choices for juveniles who have delinquency

problems, none of which are considered sentences. *Id.* Indiana Code section 31-37-18-6 provides:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
> (1) Is:
>   (A)    In the least restrictive (most family like) and most appropriate setting available; and
>   (B) Close to the parents' home, consistent with the best interest and special needs of the child;
> (2) Least interferes with family autonomy;
> (3) Is least disruptive of family life;
> (4) Imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
> (5) Provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[12]    A.M. directs our attention to *D.P. v. State*, 783 N.E.2d 767, 771 (Ind. Ct. App. 2003), in which this court determined that the juvenile court abused its discretion when it awarded guardianship of D.P. to the DOC. The *D.P.* court based its decision to reverse the juvenile court on two factors: D.P.'s special circumstances and Indiana's policy favoring the least harsh disposition. *Id.* at 769-70. As for D.P.'s special circumstances, the court noted that D.P.'s I.Q. was only sixty-five and that he had been held back in his third and fourth grade school years. *Id.* at 770. Similarly, although D.P. was beginning the ninth grade, he performed at either a third- or fifth-grade level. *Id.* Additionally, D.P. was being medicated for ADHD, which is characterized by unusually impulsive behavior. *Id.* As for Indiana's policy favoring the least harsh disposition, the *D.P.* court acknowledged that placement with the DOC may still be appropriate even if less restrictive alternatives are available. *Id.*

Nevertheless, the *D.P.* court concluded that those were not the circumstances with which it was presented because D.P. was not unresponsive to less restrictive alternatives, inasmuch as his only other contact with the juvenile system was his successful completion of probation following a battery adjudication. *Id.* at 770-71. Accordingly, the court held that the juvenile court should have suspended D.P.'s confinement with the DOC. *Id.* at 771.

[13] Here, neither A.M.'s interests nor those of her community are best served by a placement outside of the DOC. Unlike *D.P.*, A.M.'s history indicates that her many placements, both in and out of the DOC, have failed to reform her. A.M. has had the benefit of DCS services, probation services, secure detention services at Youth Care Center, DOC commitments, acute hospitalizations at Deaconess Cross Pointe, and several inpatient services. Despite all these efforts to reform and rehabilitate A.M.'s behavior, she continued to engage in a pattern of disorderly and disruptive actions. The instant cause constituted A.M.'s 20th referral to the juvenile probation department and A.M.'s behavior before and during her dispositional hearing made it abundantly clear that A.M. had no intention of complying with even the most simple request. A.M. had only been in the community thirty days before she committed what would be a Class A misdemeanor domestic battery against her mother, who advised the juvenile court that A.M. was "out of her control." (Appellant's App. Vol. II, p. 44).

[14] A.M. argues that the juvenile court failed to consider her "special circumstances" and that, despite a recommendation for "stable placement" she has not received a "stable placement" or "supportive family therapy."

(Appellant's Br. p. 9). However, the record reflects that A.M.'s own behavior issues made stable placement with her family impossible. A.M.'s mother advised that she and A.M. "did not get along" and have a strained relationship due to A.M.'s history of aggression towards her mother and younger sibling. (Appellant's App. Vol. II, p. 51). A.M.'s history of documented mental health issues indicates that she has either not responded to attempts for treatment or actively rebelled against them. In the past, the juvenile court unsuccessfully attempted to address A.M.'s mental health issues by placing her in inpatient services. During these placements, A.M. had access to individual therapy, group therapy, and family therapy. Yet, A.M. did not engage in any of these therapeutic services. Through time, A.M.'s behavior has only worsened and had now escalated to the point where she is engaged in prostitution or sex trafficking.

[15] Noting the many failures of less-restrictive placements to cause A.M. to reform herself, the juvenile court ordered A.M. committed to the DOC. We see little in the record to suggest that a less-restrictive placement will be successful this time. Therefore, we conclude that the juvenile court's decision to order A.M. committed to the DOC was not an abuse of its broad statutory discretion. The evidence before us supports a conclusion that A.M. is more likely to benefit most from a highly restrictive placement in the DOC, as it is the only placement that both ensures A.M. has access to treatment while preventing her from committing new delinquent acts.

# CONCLUSION

[16] Based on the foregoing, we hold that the juvenile court did not abuse its discretion when it committed A.M. to the DOC.

[17] Affirmed.

[18] Mathias, J. and Tavitas, J. concur