## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 10 2020, 7:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Renee M. Ortega
Lake County Juvenile Public Defender's Office
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Steven Hosler
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

L.A.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner*

November 10, 2020

Court of Appeals Case No.
20A-JV-833

Appeal from the Lake Superior Court

The Honorable Robert G. Vann, Magistrate

Trial Court Cause Nos.
45D06-1903-JD-99
45D06-2001-JD-70

**Crone, Judge.**

# Case Summary

[1] While serving his in-home placement for a juvenile delinquency adjudication, seventeen-year-old L.A. tested positive for drugs, was expelled from school, and admitted to conduct amounting to class A misdemeanor theft. As a result, the trial court order modified his placement to the Indiana Department of Correction (DOC). L.A. now appeals, claiming that the trial court abused its discretion in modifying his placement. Finding that the trial court acted within its discretion, we affirm.

# Facts and Procedural History

[2] The facts most favorable to the judgment are as follows. In March 2019, L.A. stole personal items and cash from a neighbor. The State filed a juvenile delinquency petition against him for conduct amounting to class A misdemeanor theft if committed by an adult. He admitted to the allegations and was placed on intensive level 2 probation[1] in an in-home placement with his mother (Mother). When they were evicted, L.A. lived at the Alternative House. He engaged in anger management and substance abuse services and underwent a psychological evaluation. When Mother secured housing with L.A.'s grandmother (Grandmother), L.A. was placed at the house with them. A few weeks later, Mother moved out and left him with Grandmother. L.A. did not abide by Grandmother's household rules and often left home without

---

[1] He later was stepped down to regular probation.

permission. He did not make progress in his services and had poor grades, was truant from school, was caught vaping at school, and tested positive for THC.

[3] In January 2020, L.A. was suspended from school, enrolled in night school, and was expelled from night school. By this time, he had accumulated numerous positive drug screen results. On January 30, 2020, he was charged in a new cause for conduct amounting to level 5 felony burglary, level 6 felony criminal trespassing, class A misdemeanor theft, and class B misdemeanor unauthorized entry of a motor vehicle. Based on these developments, the State filed a motion for modification of L.A.'s placement. L.A. underwent a psychiatric evaluation, which indicated a diagnosis of "conduct disorder, unspecified" and cannabis abuse. Supp. Ex. 1. Medication was not recommended.

[4] During the dispositional modification hearing, L.A. admitted to the theft allegation, and the State agreed to dismiss the remaining allegations. The probation department recommended that L.A. be placed in the DOC, where he could complete his high school diploma or G.E.D. and engage in anger management and substance abuse programs. The trial court took the matter under advisement and issued an order remanding L.A. to the DOC. L.A. now appeals his placement. Additional facts will be provided as necessary.

## Discussion and Decision

[5] L.A. contends that the trial court erred in modifying his placement. The disposition of a juvenile adjudicated a delinquent is a matter committed to the

trial court's discretion, subject to the statutory considerations of the child's welfare, community safety, and the policy favoring the least harsh disposition. *J.S. v. State*, 110 N.E.3d 1173, 1175 (Ind. Ct. App. 2018), *trans. denied* (2019). We review the trial court's dispositions and modifications thereof for an abuse of discretion, which occurs if its decision is clearly against the logic and effect of the facts and circumstances before it or the reasonable inferences that may be drawn therefrom. *Id.*; *see also K.A. v. State*, 775 N.E.2d 382, 386 (Ind. Ct. App. 2002) (applying abuse of discretion standard where juvenile challenged modification of placement to DOC following violation of terms of suspended commitment), *trans. denied*. In determining whether a trial court has abused its discretion, we neither reweigh evidence nor reassess witness credibility. *J.S.*, 110 N.E.3d at 1175.

[6] Juvenile court proceedings are civil, not criminal, in nature. *Id.* "[T]he goal of the juvenile process is rehabilitation so that the youth will not become a criminal as an adult." *Id.* at 1175-76 (quoting *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010)). As such, juvenile courts have a variety of placement choices. *Id.* Indiana Code Section 31-37-18-6 reads,

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> (A) in the least restrictive (most family like) and most appropriate setting available; and

(B) close to the parents' home, consistent with the best interest and special needs of the child;

(2) least interferes with family autonomy;

(3) is least disruptive of family life;

(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[7]     Here, the trial court found, in part,

[I]t is in the best interests of the child to be removed from the home environment and remaining in the home would be contrary to the welfare of the child because the child is engaging in dangerous behaviors which jeopardize the physical and/or mental health of the child and/or the educational services for the child.

The court finds reasonable efforts were made by the probation department to prevent or eliminate the need for removal of the child. The statements of reasonable efforts as set forth in pleadings, reports, and documents of the probation department and/or other service providers filed herein are incorporated by reference.

This disposition is consistent with the safety and the best interest of the child and is the least restrictive and most appropriate setting available close to the parents' home, least interferes with family's autonomy, is least disruptive of family life, imposes the least restraint on the freedom of the child and the child's parent,

> guardian, or custodian; and provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Appealed Order at 1-2.

[8] L.A. maintains that the trial court "abused its discretion by not ordering the least restrictive placement[.]" Appellant's Br. at 8. However, the statute requires the trial court to consider the least restrictive placement "*if* that placement comports with the safety needs of the community and the child's best interests." *J.B. v. State*, 849 N.E.2d 714, 717 (Ind. Ct. App. 2006). The court specifically found that a less restrictive placement did not comport with L.A.'s safety and best interests. We also emphasize that this appeal does not involve a challenge to L.A.'s initial placement but rather to the *modification* of his placement. More restrictive options are appropriate where earlier attempts at rehabilitation through less restrictive means have proven unsuccessful. *D.E. v. State*, 962 N.E.2d 94, 97 (Ind. Ct. App. 2011). L.A. was initially given a less restrictive placement, i.e., in-home placement with Mother and Grandmother, but he violated the terms of that placement by committing new offenses, continuing to use drugs, and being expelled from school. L.A.'s new charges included serious allegations of conduct amounting to level 5 felony burglary, level 6 felony criminal trespassing, class A misdemeanor theft, and class B misdemeanor unauthorized entry of a motor vehicle, if committed by an adult. He admitted to the theft allegation, and a true finding was entered in exchange for dismissal of the remaining allegations.

[9]     L.A. argues that he should be returned to in-home placement, pointing to the lowering of his status as an intensive level 2 probationer to a normal probationer as a measure of his success outside the DOC. However, his conduct during his time on probation violated several of his probation conditions. Another significant change occurred when Mother moved out of Grandmother's home and left L.A. under the sole supervision of Grandmother, whose testimony reflected her weariness and exasperation concerning his conduct. *See* Tr. Vol. 2 at 6 ("[L.A.] has to make a decision that the buck stops here; and until I hear him say that, I'm done. Then we could go forward, but he has to verbally say that here, and he has to hold to that."). In allocution, L.A. referenced himself, his baby son, Mother, and Grandmother: "It's not fair to him, it's not fair to myself, it's not fair to my grandma, to keep putting her through this. My grandma is not trying to stay here forever and if she leave [sic], I don't have nobody here for me; especially my mom." *Id.* at 7. The probation department recommended that L.A. be committed to the DOC, where he can "work towards completing his high school diploma or G.E.D., participate in anger control, individual and substance abuse counseling." *Id.* at 5. While we are mindful of L.A.'s difficult family circumstances, the evidence and testimony reflect the reality that less restrictive placement options have proven stressful and largely unsuccessful when it comes to his rehabilitation.

[10]    L.A. also points to his psychological issues as a circumstance militating toward a less restrictive placement. He analogizes his circumstances to those in *D.P. v. State*, where another panel of this Court reversed the trial court's placement of a

juvenile in the DOC where the juvenile was not on probation and without considering his low IQ (65) and diagnosis of attention deficit hyperactivity disorder (ADHD). 783 N.E.2d 767, 770 (Ind. Ct. App. 2003). Here, L.A. was on probation and violated those terms. Additionally, during the placement modification hearing, the trial court admitted as evidence L.A.'s psychiatric evaluation. The report indicates that L.A. was diagnosed with "conduct disorder, unspecified" and cannabis abuse. Supp. Ex. 1. The report specifically states that L.A. does not suffer from ADHD, post-traumatic stress disorder, schizophrenia, or bipolar disorder and that he is of average intelligence. *Id*. Thus, *D.P.* is factually distinguishable. The trial court did consider L.A.'s diagnosis; it simply found that it did not militate toward a less restrictive placement. Rather, the court concluded that L.A.'s best interests and safety will be served by his placement in the DOC, where he can finish his high school education and engage in services aimed at treating his behavioral and psychological issues. Based on the foregoing, we conclude that the trial court acted within its discretion in modifying L.A.'s placement to the DOC. Consequently, we affirm the dispositional order.

[11]    Affirmed.

Robb, J., and Brown, J., concur.